IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>　　*Plaintiff*,<br><br>　　　　*v.*<br><br>HOLOPHANE EUROPE LIMITED, ACUITY BRANDS LIGHTING DE MEXICO S DE RL DE CV, HOLOPHANE, S.A. DE C.V. and ARIZONA (TIANJIN) ELECTRONICS PRODUCTS TRADE CO. LTD.,<br><br>　　*Defendants*. | Case No. 2:19-cv-00291-JRG-RSP<br><br>LEAD CASE |
| YAHAM OPTOELECTRONICS CO., LTD.,<br><br>　　*Defendant*. | Case No. 2:19-cv-00398-JRG-RSP<br><br>MEMBER CASE |

**DEFENDANTS' OBJECTIONS TO CLAIM CONSTRUCTION ORDER (DKT. 111)**

Pursuant to Federal Rule 72(a) and Local Rule CV- 72(b), Defendants object to two aspects of the Magistrate Judge Payne's Claim Construction Order filed October 26, 2020 (Dkt. No. 111; "Order"), regarding the (1) area terms, and (2) uniformity terms. Although the Court is entitled to review *de novo* the Magistrate Judge's construction, Defendants do not seek plenary review of any aspects of the Order.

I.  **DISPUTED TERMS**

A.  **"area" / "rectangular area" / "rectangular region"**

As Ultravision's counsel stated at the *Markman* hearing: "I acknowledge and recognize that the specification only addresses and has embodiments related to billboards or signs." Reporter's Transcript of Claim Construction Hearing Conducted Via Video Conferencing ("*Markman* Tr.") at 50:14-16. This is not in dispute. Yet, there is a dispute as to whether the claimed "area" or "region" to be illuminated are those of a sign (such as the billboards described in the patents), or ***any surface***, such as parking lots, streets and sidewalks (which are the applications for which all but one accused product is used).

The Patents-in-Suit are unquestionably limited to LED lighting for signs, as Ultravision conceded at the *Markman* hearing.[1] Ultravision's counsel's statement is aligned with the written description of the Patents-in-Suit, which focuses exclusively on billboard and externally illuminated signs. *See*, *e.g.*, '946 Patent at *passim* (directly or indirectly referring to billboard lighting in every figure; referring to billboard lighting throughout the specification). Nowhere do

---

[1] Ultravision made similar concessions to this very same Court in the *Lamar* case. *Ultravision Technologies, LLC v. Lamar Advertising Co.*, et al., C.A. No. 2:16-cv-374 (E.D. Tex.), *Lamar* Op. Br. at 1-2 (Ultravision argued that Patents-in-Suit in the same family asserted in the *Lamar* case, to include U.S. Patent No. 9,212,803 asserted claims with identical "area" terms at issue in this case, were only related to billboards).

the patents suggest that they are applicable to any "area" besides the area of a sign or billboard. In fact, the only references to illuminated areas in the patent are to the "surface 102" of a billboard. *See* '946 Patent at 3:22-24, 3:31-33; 3:36-37, 3:45-47, 4:32, 5:37-38, 6:26, 7:15-16, 7:20-34, etc.

Because the limited disclosure of the intrinsic record is beyond dispute, it is not surprising that at the *Markman* hearing, the Court explained:

> the specification which very clearly . . . in describing the field, it talks about it being . . . externally illuminated signs and then in . . . every other section initially and particularly in the first paragraph of the detailed description where it explains the breadth of the specification as not limited to billboards but intended to apply to any type of sign. It's -- it is difficult for me to read these – these terms, the ones that are at issue here, as not relating to signs in view of that.

*Markman* Tr. at 49:9-18.  A POSITA would understand the scope of the area and region to be illuminated, just as the Court described at the *Markman* hearing.  The inventor's intent would be clear to a POSITA, based on the applicant's own statement in the specification: "Although billboards are used herein for purposes of example, it is understood that the present disclosure may be applied to lighting for any type of sign that is externally illuminated." '946 Patent at 3:17-20. In other words, although the specification only encompasses a billboard embodiment, the invention, as claimed, may be applied to other externally illuminated signs.  There certainly is nothing in the specification that even suggests to a POSITA that the invention is intended to apply to an LED lighting assembly used to illuminate ***any surface*** such as a parking lot or road, as Ultravision contends is encompassed by the "plain an ordinary meaning" of area.

That same inventor intent and exact claim scope is captured by Defendants' proposed construction of the area terms, *i.e.*, sign and rectangular sign.  Defendants did not propose a construction that is limited to the single billboard embodiment of the specification, *i.e.*, a billboard, as Ultravision argued in its briefing and at the *Markman* hearing.  *See, e.g.,* Ultravision's Reply Claim Construction Brief, Dkt. 99 at 9; *Markman* Tr. at 51:10-19. Defendants' construction is

commensurate with the applicant's intent and statement as to the full scope of its invention – an LED lighting assembly for illuminating and externally illuminated sign.

Moreover, the Federal Circuit's opinion in *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019) does not require a different result. In *Continental Circuits*, which Ultravision argued was the best precedent for its position (*Markman* Tr. at 51:10-11), the Federal Circuit identified and addressed a very different issue -- whether the terms "surface," "removal," and "etching" should be construed to read into the claim a limitation that they be "*produced by a repeated desmear process*." *Id*. at 794. With respect to this proposed construction, the Federal Circuit considered whether there was a disclaimer that permitted the limitation to be read into the claims. *Id*. at 787. As the Federal Circuit explained, "[w]e acknowledge the difficulty in drawing the 'fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims.'" *Id*. at 797. Unlike in *Continental Circuits*, where the specification used exemplary language and was clear to avoid explaining the scope of the invention according to a particular embodiment (*id*.), the Patents-in-Suit unmistakably and universally describe an invention for illuminating billboards.

In contrast to the distinguishable facts of *Continental Circuits*, the Federal Circuit's opinion in *Wis. Alumni Research Found. v. Apple Inc*., 905 F.3d 1341 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 44 (2019), addresses facts that are more aligned with the facts of the present case. In *WARF*, the claim term at issue was "prediction" and the dispute was whether the term referenced just dynamic predictions or dynamic and static predictions. *Id*. at 1350-51. The district court gave the term its narrower construction and that construction was upheld by the Federal Circuit. *Id*. at 1351. The Federal Circuit's holding was based on its findings that "[w]here, as here, 'a patent repeatedly and consistently characterize a claim term in a particular way, it is proper to construe the claim

3

term in accordance with that characterization." *Id*. at 1351. The Federal Circuit then explained, "[i]n sum, rather than improperly reading a limitation from the preferred embodiment into the claims, the district court's construction, with which we agree, properly reads the claim term in the context of the entire patent." The same analysis applies here. The Patents-in-Suit repeatedly and consistently characterize the area to be illuminated as the surface of a billboard, or more broadly, an externally illuminated sign.

Moreover, even if a term is to be given its plain and ordinary meaning as the Court proposes here, that plain and ordinary meaning is what would be understood by a POSITA in the context of the specification and prosecution history. *Trustees of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1363-66 (Fed. Cir. 2016) (finding that claim terms are read in view of the specification and their use in the specification can limit the terms, even in the absence of an express disavowal or lexicography). Defendants contend that a POSITA would understand the area terms, as viewed through the lens of the intrinsic record, to refer to a sign with its defined boundaries. To the extent the Court's construction is intended to encompass something broader through its plain and ordinary meaning construction, the Court's construction is unclear or possibly fails to resolve a claim construction dispute that is should resolve according to *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

For these reasons and those expressed in Defendants' claim construction briefs and at the hearing, the Court should adopt Defendants' constructions of the area terms.

> **B.** **Defendants' Proposed Construction of "substantially uniform" / "substantially equal level of illumination" / "a uniformity . . . remains substantially unchanged" / "the uniformity of light . . . remains substantially the same" Is Correct in View of the Intrinsic Evidence**

The uniform terms are terms of degree. Order at 18. Although terms of degree are not *per se* indefinite, the specification of the '410 Patent offers no "objective boundaries" yielding "some

4

standard for measuring the scope of the phrase," such that a skilled artisan cannot determine when infringement occurs. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014); *see also Geodynamics, Inc. v. Dynaenergetics US, Inc.*, No. 2:15-CV-1546-RSP, 2016 WL 6217181, at *15 (E.D. Tex. Oct. 25, 2016) (finding "substantially equal to the total depth of penetration/(the tunnel)" indefinite because specification disclosed only depths that are "equal," not "substantially equal").

Respectfully, the Court's construction only perpetuates the problem. The Court relies on the following language "so that each LED illuminates substantially the entire surface with a substantially equal level of illumination per LED," and "minimiz[es] any noticeable unevenness in the overall illumination, even if one of the remaining LEDs 416 malfunctions." Order at 19. However, the adoption of "noticeable unevenness" into the construction merely substitutes one subjective term for another. Order at 20-21 (emphasis added).[2] The language is merely aspirational without any objective boundaries.

In context, the '410 Patent discloses that "[i]f [the illumination provided by the remaining LEDs directed to one or more portions of the surface is] done *properly*, this may be accomplished while minimizing any *noticeable* unevenness in the overall illumination, even if one of the remaining LEDs 416 malfunctions." '410 Patent at 6:18-23 (emphasis added). A POSITA would understand that "noticeable unevenness" is also subjective and does not provide any "objective boundary" as to what another subjective term "substantially equal level of illumination" is. *See*

---

[2] The Court construes "substantially equal level of illumination" to mean "level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots." Order at 20. The Court construes "is substantially uniform," "remains substantially unchanged," and "remains substantially the same" to mean "does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots." *Id.* at 21

5

*Interval Licensing*, 766 F.3d at 1371. Further, the '410 Patent offers no clue as to what "done properly" means.

Additionally, the Court points to "[t]he minimum distance is designed such that overlapping light from adjacent LEDs does not create interference patterns and result in dead spots on the surface" in the specification to show what is not uniform, *e.g.*, "hot spots" and "dead spots." Order at 18-19. This paragraph in the '410 Patent is equally problematic because the '410 Patent fails to provide any guidance as to what "minimum distance" means. Simply put, there are no objective boundaries provided in the '410 Patent.

The facts and rationale by the *Interval Licensing* court is directly on point. At issue was whether the term "unobtrusive manner" was indefinite. *Interval*, at 1371-74. Like the '410 Patent, the patentee's description in the specification was equally subjective, explaining that displaying content in an unobtrusive manner meant that it "does not distract a user of the apparatus from a primary interaction with the apparatus." *Id*. at 1372. The *Interval Licensing* court properly held that such language fails to provide any clarity or objective boundary to the subjective claim language. *Id.* Similar to the "unobtrusive manner" term in *Interval Licensing*, what is "noticeable" is highly subjective and provides little guidance to a POSITA. *Interval*, at 1371. The Court's reasoning that "substantially uniform" provides a standard based on what can be seen by the normal human eye neglects the subjective nature of what is observed by a normal human eye. The Court's construction thus reflects the subjective and indefinite nature of the uniformity terms.

For the reasons stated above, Defendants respectfully request that the Court find that the terms "substantially uniform," "substantially equal level of illumination," "a uniformity . . . remains substantially unchanged" and "the uniformity of light . . . remains substantially the same" are indefinite.

Dated:  November 9, 2020 	Respectfully submitted,

*/s/ Melissa R. Smith*
Matthew S. Yungwirth
Glenn D. Richeson
DUANE MORRIS LLP
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
P: (404) 253.6900 | F: (404) 253.6901
msyungwirth@duanemorris.com
gdricheson@duanemorris.com

Melissa R. Smith
GILLAM & SMITH, LLP
TX State Bar No. 24001351
303 S. Washington Avenue
Marshall, Texas 75670
P: (903) 934-8450 | F: (903) 934-9257
melissa@gillamsmithlaw.com

Gilbert A Greene
DUANE MORRIS LLP
900 S. Capital of Texas Hwy., Suite 300
Austin, TX 78746-5435
P: 713-402-3946 | F: 713-513-3583
BGreene@duanemorris.com

**Counsel for Defendants**
**Holophane Europe Limited, Acuity Brands Lighting De Mexico S De RL De CV, Holophane, S.A. De C.V., and Arizona (Tianjin) Electronics Products Trade Co., LTD.**

*/s/ Jeffrey L. Johnson (With permission)*
J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
P: (903) 657-8540 | F: (903) 657-600
mark@themannfirm.com
blake@themannfirm.com

7

Jeffrey L. Johnson
Texas Bar No. 24029638
ORRICK, HERRINGTON& SUTCLIFFE LLP
609 Main, 40th Floor
Houston, Texas 77002
P: (713) 658-6450 | F: 713) 658-6401
jj@orrick.com

T. Vann Pearce, Jr.
ORRICK, HERRINGTON& SUTCLIFFE LLP
Columbia Center 1152 15th Street N.W.
Washington, D.C. 20005
Telephone: (202) 339-8400
vpearce@orrick.com

***Attorneys for Defendant
YAHAM OPTOELECTRONICS CO., LTD.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 9, 2020, a true-and-correct copy of the foregoing document was served *via* the Court's CM/ECF system on all counsel of record.

*/s/ Melissa R. Smith*