**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>HOLOPHANE EUROPE LIMITED,<br>ACUITY BRANDS LIGHTING DE<br>MEXICO S DE RL DE CV, HOLOPHANE<br>S.A. DE C.V., and ARIZONA (TIANJIN)<br>ELECTRONICS PRODUCTS TRADE<br>COMPANY, LTD.,<br><br>          Defendants. | Case No. 2:19-cv-00291-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF ASSERTED PATENTS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

III.    SUMMARY JUDGMENT STANDARD.............................................................2

IV.     BACKGROUND ..................................................................................................2

V.      STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................5

      A.    Acuity....................................................................................................... 5

      B.    Holophane Europe .................................................................................... 6

      C.    Holophane Mexico.................................................................................... 7

      D.    Arizona (Tianjin) ..................................................................................... 7

      E.    Acuity Mexico .......................................................................................... 7

VI.     ARGUMENT .....................................................................................................10

      A.    Defendants Do Not Perform Any Acts of Infringement within the United
           States ...................................................................................................... 10

      B.    Ultravision Waived Its Claim for Indirect Infringement by Refusing to
           Produce Discovery in Support of that Claim ........................................ 12

      C.    Defendants Have Not Knowingly Induced Direct Infringement by Another ....... 15

VII.    CONCLUSION...................................................................................................19

**TABLE OF AUTHORITIES**

<u>Cases</u>

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307 (Fed.Cir. 2007) ...............................15

*Acuity Brands Lighting Inc. v. Ultravision Technologies LLC,* 1:19-cv-02207-MN
   (D. Del.). Dkt. 29 .........................................................................................................3

*Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970)...................................................................2

*Barry v. Medtronic, Inc.,* 914 F.3d 1310 (Fed. Cir. 2019)............................................................17

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ......................................................................2, 19

*Corydoras Techs., LLC v. Apple Inc.,* 2:16-CV-00538-JRG, 2016 WL 9242435
   (E.D. Tex. Nov. 23, 2016) ..............................................................................................17

*Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518 (1972) .................................................10

*DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293 (Fed.Cir. 2006)................................................ 15-16

*Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323 (Fed. Cir. 2008) .....................................15

*Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321 (Fed. Cir. 2010) .....................................................16

*International Rectifier Corp. v. Samsung Electronics Co., Ltd.,* 361 F.3d 1355
   (Fed. Cir. 2004)............................................................................................................10

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369
   (Fed. Cir. 2005)............................................................................................................17

*Microsoft Corp. v. AT&T Corp.,* 550 U.S. 437 (2007)......................................................... 10-12

*Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866,
   48 USPQ2d 1161 (Fed.Cir. 1998).................................................................................14

*Power Integrations v. Fairchild Semiconductor Int'l, Inc.,* 711 F.3d 1348
   (Fed. Cir. 2013)............................................................................................................11

*Tinnus Enters., LLC v. Telebrands Corp.,* 846 F.3d 1190 (Fed. Cir. 2017) ...............................17

*Under Sea Ind., Inc. v. Dacor Corp.,* 833 F.2d 1551 (Fed. Cir. 1987).........................................2

*Zelinski v. Brunswick Corp.,* 185 F.3d 1311 (Fed. Cir. 1999).................................................14, 19

<u>Statutes</u>

35 U.S.C. § 271(a) ........................................................................................ 1, 10-12

35 U.S.C. § 271(b) ...........................................................................................................15

35 U.S.C. § 271(f) ...........................................................................................................11

35 U.S.C. § 284 ...............................................................................................................11

**<u>Other Authorities</u>**

Fed. R. Civ. P. 56 ..............................................................................................................2

Federal Rule of Civil Procedure 37(c)(1) ......................................................................15

Federal Rule of Civil Procedure 56(a) .......................................................................1, 19

Pursuant to Federal Rule of Civil Procedure 56(a), Defendants Holophane Europe Limited, Acuity Brands Lighting De Mexico S de RL de CV, Holophane, S.A. de C.V., and Arizona (Tianjin) Electronics Products Trade Co., LTD (collectively "Defendants") hereby move for summary judgment of Non-Infringement of U.S. Patent Nos. 8,870,410, 8,870,413, and 10,223,946 (collectively the "Asserted Patents").

## I.   INTRODUCTION

Defendants are entitled to a judgment of non-infringement as a matter of law because they have not committed any acts of infringement in the United States, *i.e*., "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention." 35 U.S.C. § 271(a). Likewise, Ultravision waived its pled claim of indirect infringement based on its failure to provide any evidence on that claim during discovery. And even if the Court determines that pleading the claim alone is sufficient to preserve it, there is a complete absence of evidence that Defendants have induced any third party to commit any action in the United States, no less an act of direct infringement.

None of this is surprising given the nature of Defendants' businesses, as described in their Motion for Summary Judgment for Lack of No Personal Jurisdiction (Dkt. 114) and below.[1] In addition to not establishing factual support for its personal jurisdiction allegations, Ultravision separately failed to establish any factual support for its allegations of U.S.-based activity or Defendants' alleged encouragement of third party infringement. Accordingly, summary judgment of non-infringement should be granted.

---

[1] In its Response, Ultravision seems to concede there is a lack of jurisdiction as to Defendants Holophane Europe Limited, Holophane, S.A. de C.V., and Arizona (Tianjin) Electronics Products Trade Co., LTD. Dkt. 122 at 1. Nevertheless, those defendants join this Motion given the seemingly inconsistent statements and references to "Defendants" in Ultravision's response.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.  Is there a genuine dispute of material fact as to whether Defendants make, use, offer to sell, or sell any patented invention, within the United States or import into the United States any patented invention?

2.  Should Ultravision be permitted to pursue an indirect infringement claim, given its failure to provide any evidence regarding that claim during discovery?

3.  If Ultravision is permitted to pursue a claim for indirect infringement, is there a genuine dispute of material fact as to whether Defendants induced infringement by encouraging the direct infringement of a third party in the United States?

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  As the moving party, Defendants have "the burden of showing the absence of a genuine issue as to any material fact," and the evidence "must be viewed in the light most favorable to the opposing party," Plaintiff Ultravision ("Ultravision").  *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 157 (1970).  Defendants may meet this burden by pointing out an absence of evidence to support the plaintiff's case. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 325.  "The burden is always on the patentee to show infringement." *Under Sea Ind., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987).

## IV.    BACKGROUND

Ultravision asserts three patents against four families of products distributed, marketed, and sold in the United States by Acuity Brand Lighting, Inc. ("Acuity"). The allegedly infringing

products circulating in the United States are undoubtedly **Acuity's** products; yet, Ultravision did not sue Acuity.[23]  Instead, Ultravision sued Acuity's subsidiaries operating in the UK, Mexico and China.[4]

Ignoring this issue, Ultravision pled generic infringement allegations against Defendants.[5] First, it pled without support that the four Defendants directly infringe Asserted Patents by "making, using, offering to sell, and/or selling within the United States and/or importing into the United States" Accused Products.  Dkt. 22, Am. Compl. at ¶¶ 33, 46, and 60.  Second, Ultravision pled indirect infringement based on Defendants allegedly "knowingly and intentionally inducing others, including customers, installers, and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, and/or selling within the United States and/or importing into the United States products that include infringing technology."  Dkt. 22, Am. Compl. at ¶¶ 37-41, 50-55, and 68-73.  Ultravision then expanded on those allegations by generically identifying various acts that may be relevant to an indirect infringement analysis:

> Defendants knowingly and intentionally induce infringement of one or more claims
> . . . by taking active steps, directly and/or through intermediaries, to encourage
> others, including customers, installers, and end-users, to make, use, offer to sell,

---

[2]  Acuity filed a declaratory judgment suit in the District of Delaware involving the same Ultravision patents and Acuity's accused products (discussed further below).  *Acuity Brands Lighting Inc. v. Ultravision Technologies LLC,* 1:19-cv-02207-MN (D. Del.).  In that action, Ultravision is pursuing the same infringement claims directly against Acuity.  *See* Amended Complaint (Dkt. 22).

[3]  Declaration of Glenn Richeson (Richeson Decl.) in Support of Defendants' Motion for Summary Judgment of Non-Infringement of Asserted Patents, Ex. 1, Excerpts of *Acuity Brands Lighting Inc. v. Ultravision Technologies LLC,* 1:19-cv-02207-MN (D. Del.). Dkt. 29, Ultravision's Answer, Affirmative Defenses, and Counter Claims to Plaintiff's 1st Amended Complaint.

[4]  *See* Amended Complaint (Dkt. 22) at ¶¶ 2-5; Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment for Lack of Personal Jurisdiction (Dkt 122) at p. 2.

[5]  Defendants include Holophane Europe, Ltd. ("Holophane Europe"); Holophane S.A. de C.V. ("Holophane Mexico"); Acuity Brands Lighting de Mexico S de RL de CV ("Acuity Mexico"); and Arizona (Tianjin) Electronics Products Trade Company, Ltd. ("Arizona (Tianjin)").

and/or sell within the United States and/or import into the United States products, . . . with the specific intent to cause them to use the accused products in an infringing manner. Such steps by Defendants include, among other things, advising or directing customers, installers, and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or providing manuals, guides, installation instructions and other documentation that guide end-users to use the accused products in an infringing manner. Defendants are performing these steps with knowledge of the '410 Patent and with knowledge that the induced acts constitute infringement, at least as of the date of the initial Complaint filed in this action. Upon information and belief, . . ., Defendants are encouraging and facilitating infringement of one or more claims . . . . Such steps by Defendants include, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner. . . .

*Id*. at ¶ 38 (similar allegations for other two patents are at ¶¶ 51-52 and 69-70).

Since prior to fact discovery, Ultravision has been aware that Defendants contest all of these allegations, which do not reflect Defendants' actual businesses and relationship with Acuity – their U.S.-based parent that is the entity that actually does business in the United States. *See, e.g.,* Dkt. 27, 27-1, 27-2, 27-3, 27-4, 35, 37 and 37-1 (explaining nature of Defendants' business). For example, Defendants provided declarations at the motion to dismiss stage in which they identified the nature of their businesses:

- Holophane Europe <u>only</u> conducts business <u>in Europe</u> as a European seller of Acuity products to European consumers (Dkt. 27-1, ¶¶ 8-10, 34-36);

- Holophane Mexico <u>only</u> sells Acuity products <u>in Mexico</u> as a Mexico seller of Acuity products to Mexican consumers (Dkt. 27-3, ¶¶ 3, 8, 27);

- Arizona (Tianjin) makes <u>non-accused</u> ballasts for emergency lights for Acuity and for which Acuity <u>takes possession in China</u> (Dkt. 27-4, ¶¶ 3, 8, 28; Dkt. 37-1 ¶¶ 13, 14); and

- Acuity Mexico is a maquiladora that manufactures and assembles under a manufacturing services agreement which explicitly states that Acuity controls the relationship, maintains ownership of the products (assembled and unassembled),

4

and governs Acuity <u>taking possession of the assembled products in Mexico</u>. (Dkt. 27-2, ¶¶ 3, 8, 28).

In light of the evidence provided by Defendants, it is unsurprising that during the course of this case, Ultravision did not develop any evidentiary record to support its infringement allegations. Defendants' interrogatory responses confirmed their prior representations and, while Ultravision filed notices of depositions of Defendants late in fact discovery, it never actually followed through with those depositions.  Instead, Defendants took multiple depositions of third-party, Acuity, and elicited testimony that is consistent with Defendants' declarations.[6]

Likewise, Ultravision did not advance its allegations of indirect infringement.  For example, its P.R. 3-1 Infringement Contentions did not even identify a theory of induced infringement against any Defendant.[7]  Likewise, Ultravision failed to present a corporate representative who was prepared to testify regarding facts or theory of infringement made by Ultravision against any Defendant.[8]

## V.      STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.      Acuity

1.      Acuity is a United States-based parent company of the four overseas Defendants named in this case—Holophane Europe, Holophane Mexico, Arizona (Tianjin), and Acuity

---

[6] *See, e.g.,* ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

[7] *See, e.g.,* Excerpts of Ultravision's P.R. 3-1 Disclosures, attached as Ex. 4 to Richeson Declaration.

[8] *See, e.g.,* ████████████████████████████████████████████████████
████████████

Mexico.[9]

2.      Acuity supplies components to Acuity Mexico and Acuity Mexico assembles with the remaining Accused Products (Sign-Vue LED II, KAX, and RSX) in Mexico.

3.      Acuity oversees, bears the risk of loss throughout the entire product-manufacturing lifecycle, and owns all components and finished goods throughout that lifecycle.[10]

4.      Acuity takes physical possession of the Accused Products in Mexico and imports those products into the United States.[11]

**B.      Holophane Europe**

5.      Holophane Europe is a UK corporation having its principal place of business in the UK, and is a foreign subsidiary of Acuity.  Holophane Europe only conducts business **in Europe** as a European seller of Acuity products to **European** consumers. Holophane Europe does not design, manufacture, use, offer to sell, sell, or import any products (including the Accused Products) in the United States.[12]  Holophane Europe was not involved in the design or manufacture of any of the Accused Products in this case.[13]

6.      Holophane Europe has never marketed in Texas, does not solicit business in Texas, and has not used any Texas-specific design, advertising, or marketing materials.[14]

---



[11] Richeson Dec., Ex. 9, Lane Decl. at ¶ 6.

[12] Dkt. 27-1, Barnwell Decl., at ¶¶ 6-9, 36 (resubmitted as Richeson Decl. Ex. 10).

[13] Dkt. 27-1, Barnwell Decl., at ¶ 10 (resubmitted as Richeson Decl. Ex. 10).

[14] Dkt. 27-1, Barnwell Decl., at ¶¶ 12-17, 19-22, 25-30 (resubmitted as Richeson Decl. Ex. 10).

### C.   Holophane Mexico

7.     Holophane Mexico is a Mexican corporation with its principal place of business in Ciudad de Mexico, Mexico, and is a foreign subsidiary of Acuity.[15]

8.     Holophane Mexico's sole business is to sell Acuity products **in Mexico** to **Mexican** customers. Holophane Mexico does not design, manufacture, use, offer to sell, sell, or import any products (including the Accused Products) in the United States.[16]

### D.   Arizona (Tianjin)

9.     Arizona (Tianjin) is a Chinese corporation with its principal place of business in Tianjin, China. It is a wholly-owned subsidiary of Arizona Trading Company, Ltd., a Hong Kong company that Acuity acquired in or around May 2018.[17]

10.    Arizona (Tianjin) does not manufacture, use, offer to sell, sell, or import any products (including the Accused Products) in the United States.  Arizona (Tianjin) has never marketed in Texas, does not solicit business in Texas, and has not used any Texas-specific design, advertising, or marketing materials.[18]

### E.   Acuity Mexico

11.    Acuity Mexico is a Mexican corporation with its principal place of business in Guadalupe, Nuevo Leon, Mexico, and is a foreign subsidiary of Acuity.[19]

---

[15] Dkt. 27-3, Angel Gonzalez Decl., at ¶¶ 3, 7 (resubmitted as Richeson Decl. Ex. 11).

[16] Dkt. 27-3, Angel Gonzalez Decl., at ¶¶ 3, 8 (resubmitted as Richeson Decl. Ex. 11); Richeson Decl. Ex. 2, Sep. 25, 2020 Lane Dep. Tr., at 50:18-51:5.

[17] Dkt. 27-4, Bei Decl., at ¶¶ 3, 7 (resubmitted as Richeson Decl. Ex. 12).

[18] Dkt. 27-4, Bei Decl., at ¶¶ 8, 17-19 (resubmitted as Richeson Decl. Ex. 12)

[19] Dkt. 27-2, Javier Gonzalez Decl. at ¶¶ 3, 7 (resubmitted as Richeson Decl. Ex. 13); Richeson Decl. Ex. 6, Acuity Brands Inc. Form 10-K as of Aug. 31, 2019, at 3; ██████████████████████████ ████████████████████████ Lane Decl. at ¶ 5; Lane Decl. Ex. A, Manufacturing Services Agreement, at p.1 ("Acuity Brands Lighting de Mexico. S. de R.L. de C.V. (as successor-in-interest to Productos Lithonia Lighting de México. S.A. de C.V,), a company

12.     Acuity Mexico operates under preferential tariff program established by the U.S. and Mexico as a maquiladora that manufactures and assembles Acuity lighting fixtures and poles in Mexico. Maquiladora status authorizes Acuity to import into Mexico, certain items, such as product components (sourced from various suppliers) for assembly into finished goods, so long as Acuity continues to owns such items throughout the product-manufacturing process and the items are exported back out of Mexico within three years, including as assembled, finished goods.[20]



13.

14.

15.

created under the Mexican laws and located in the cities of Guadalupe and San Nicolás de los Garza, State of Nuevo Leon. Mexico").

[20]  Lane Decl. at ¶ 6;

[21]  Lane Decl. at ¶¶ 7-8 & Ex. A

[22]  Lane Decl. at ¶ 8;

[23]

16. ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████



17.    Acuity—not Acuity Mexico—acquires, owns, and bears the risk of loss of the

components (sourced from various suppliers) sent to Acuity Mexico's facilities and the produced

finished goods.[25]

18. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████"[26]

19.    Acuity Mexico does not make, offer to sell, sell, or import any products (including

the Accused Products) in the United States.[27]

---

[24] Lane Decl. Ex. A, Manufacturing Services Agreement, at ¶¶ 2, 5

[25] ████████████████████████████████████████████████
████████████████████████████████████████████████

[26] ██████████████████████████████████████

[27] Dkt. 27-2, Javier Gonzalez Decl., at ¶ 8 (resubmitted as Richeson Decl. Ex. 13); Dkt. 37-1 Lane
Decl. at ¶¶ 5-14 (resubmitted as Richeson Decl. Ex. 14); ████████████████████
█████████████████████████████████████████

20.     Acuity Mexico does not import or export any materials or goods to the United States or pay for shipping of any materials or goods on the Mexican side of the border.[28]

21.     Acuity Mexico has never marketed in Texas, does not solicit business in Texas, and has not used any Texas-specific design, advertising, or marketing materials.[29]

## VI.   ARGUMENT

### A.   Defendants Do Not Perform Any Acts of Infringement within the United States

United States patent law provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). This statute defines the activity that is may be the subject of a claim of direct infringement and it applies only to actions taken within the United States. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law. The traditional understanding that our patent law operates only domestically and does not extend to foreign activities, is embedded in the Patent Act itself, which provides that a patent confers exclusive rights in an invention within the United States.") (internal citations omitted); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972) ("The statute makes it clear that it is not an infringement to make or use a patented product outside of the United States."); *International Rectifier Corp. v. Samsung Electronics Co., Ltd.*, 361 F.3d 1355, 1360 (Fed. Cir. 2004) ("express language of § 271(a) does not apply to "conduct outside the United States").

---

[28] Dkt. 27-2, Javier Gonzalez Decl., at ¶ 8 (resubmitted as Richeson Decl. Ex. 13): ███████████ ████████████████████████████████████

[29] Dkt. 27-2, Javier Gonzalez Decl., at ¶¶ 17-19 (resubmitted as Richeson Decl. Ex. 13)

As the United States Supreme Court made clear in *Microsoft*, § 271(a) does not forbid extraterritorial acts.[30]   Likewise, the Federal Circuit has reiterated, "U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1372 (Fed. Cir. 2013). Because the Patent Act only "allow[s] specifically 'damages adequate to compensate *for the infringement*,'" it does not encompass "compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Id.* (quoting 35 U.S.C. § 284, original emphasis).

Here, Ultravision has not developed any evidence that Defendants make, use, offer to sell, or sell the Accused Products within the United States or import the Accused Products into this country.[31]   Instead, the evidentiary record reflects that:

- Holophane Europe only conducts business in Europe as a European seller of Acuity products to European consumers.[32]

- Holophane Mexico only sells Acuity products in Mexico to Mexican customers.[33]

- Arizona Tianjin only manufactures non-accused products which Acuity takes possession of in China.[34]

- Acuity Mexico is a maquiladora that only manufactures and assembles products per a manufacturing services agreement for Acuity in Mexico.[35]

---

[30] 35 U.S.C. § 271(f) which governs the prohibition against supplying all or a substantial portion of the components of a patented invention from the United States for combination abroad is not applicable here where all the Defendants are foreign entities.

[31] For Holophane Europe, Holophane Mexico and Arizona (Tianjin), Ultravision seems to concede this point in its Response in Opposition to Defendants' Motion for Summary Judgment for Lack of Personal Jurisdiction (Dkt. 114) at p. 1.

[32] Dkt. 27-1, Barnwell Decl. at ¶¶ 8-10, 34-36 (resubmitted as Richeson Decl. Ex. 10).

[33] Dkt. 27-3, Angel Gonzalez Decl. at ¶¶ 3, 8, 27 (resubmitted as Richeson Decl. Ex. 11).

[34] Dkt. 27-4, Bei Decl. at ¶¶ 3, 8, 28 (resubmitted as Richeson Decl. Ex. 12); Dkt. 37-1 ¶¶ 13, 14 (resubmitted as Richeson Decl. Ex. 14).

[35] Dkt. 27-2, Javier Gonzalez Decl. at ¶¶ 3, 8, 28 (resubmitted as Richeson Decl. Ex. 13).

None of this activity is actionable under 35 U.S.C. § 271(a).  Thus, regardless of whether Ultravision's unsupported stream of commerce allegations are sufficient to support its claim that the Court has personal jurisdiction over the Defendants, the stream of commerce allegations cannot turn Defendants' foreign activity into actionable infringement activity in the United States.[36]

To the extent Ultravision intends to rely on the alleged acts of importation that it identified in its Response to the Motion to Dismiss, Defendants have submitted evidence to establish conclusively that the allegations are incorrect and based on Ultravision's counsel's misunderstanding of the evidence to which it cites.[37]  Accordingly, those unsupported allegations do not create a genuine dispute of material fact.

As a result, regardless of the merits of Ultravision's claim that the Accused Products meet the limitations of the Asserted Claims, Defendants have performed no act that even qualifies for *consideration* as direct infringement. Consistent with well-established limitations on the reach of U.S. patent law, summary judgment in favor of Defendants should be granted.

**B.**     **Ultravision Waived Its Claim for Indirect Infringement by Refusing to Produce Discovery in Support of that Claim**

In its Amended Complaint, Ultravision generically alleges that Defendants indirectly infringe by "knowingly and intentionally inducing others" to directly infringe. Dkt. 22, Am. Compl. at ¶¶ 37-41, 50-55, and 68-73.  More specifically, the allegations in the Amended Complaint broadly describe that Defendants "encourage others" to directly infringe the Accused

---

[36] As the Supreme Court recognized in *Microsoft v. AT&T*, "foreign law alone, not United States law, currently governs the manufacture and sale of components of patented inventions in foreign countries [and thus,] [i]f [a patentee] desires to prevent copying in foreign countries, its remedy lies in obtaining and enforcing foreign patents." 550 U.S. at 439.

[37] Dkt. 27-2, Javier Gonzalez Decl. at ¶ 8 (resubmitted as Richeson Decl. Ex. 13); Dkt. 37-1 ¶¶ 5-14 (resubmitted as Richeson Decl. Ex. 14); ███████████████████████████████████

Products through steps such as "advising or directing", "advertising and promoting" and/or "providing manuals, guides, installation instructions and other documentation." *Id.*

Ultravision's allegations ring hollow, as it failed to elicit or provide any evidence as to indirect infringement during the course of fact discovery.  In fact, Ultravision made no material effort to develop the evidentiary record and even refused to provide discovery regarding indirect infringement without explanation.

First, Ultravision's Infringement Contentions did not identify a claim or theory of induced infringement against any Defendant.  In fact, the words "induce", "induced", and/or "indirect" do not appear anywhere in the contentions.[38]



---

[38]*See, e.g.*, Excerpts of Ultravision's P.R.  3-1 Disclosures, attached as Ex. 4 to Richeson Declaration.

[39] Excerpts attached as Ex. 5 to Richeson Declaration.



Ultravision's failure to meaningfully pursue a claim of indirect infringement is further evidenced in its expert's reports.

Statements that fail to provide necessary evidentiary basis to support a claim present no genuine issue of material fact. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999); *See, e.g., Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 876, 48 USPQ2d 1161, 1169–70 (Fed.Cir. 1998) (reasoning that conclusory expert declarations devoid of facts upon which the conclusions were reached fail to raise a genuine issue of material fact which would preclude summary judgment).

---

[40] Excerpts of Ultravision's Response and Objections to Defendants 1st Set of Interrogatories attached as Ex. 15 to Richeson Declaration.

[41]

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Here, Ultravision's decision not to pursue its indirect infringement theory or identify facts supporting that theory in its Contentions, during its corporate representative deposition or in its interrogatory responses has consequences.  According to the Federal Rules, Ultravision should not be permitted to argue indirect infringement – a claim that it has effectively waived.

### C.    Defendants Have Not Knowingly Induced Direct Infringement by Another

Infringement is a question of fact that is reviewed for substantial evidence. *Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1332 (Fed. Cir. 2008).  Under 35 U.S.C. § 271(b), a party is liable for indirect infringement if it "actively induces infringement of a patent." "In order to prevail on an inducement claim, the patentee must establish first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1312 (Fed.Cir. 2007).  To support a finding of inducement there must be "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306 (Fed.Cir. 2006).  Furthermore, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts," and that the infringer "knowingly induced infringement." *Id.* at 1306.

To "actively" induce infringement under Section 271(b), the alleged infringer must affirmatively intend to cause or encourage infringement. Indeed, even intent to cause the accused acts insufficient.  The alleged inducer must actually intend that its actions cause direct infringement.

15

*DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("the intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement . . . . Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1331– 32 (Fed. Cir. 2010) ("To establish inducement, a patent owner must show that the accused infringer induced the infringing acts and knew or should have known that its actions would induce actual infringement. It is not enough to simply intend to induce the infringing acts.") (citation omitted).

Here, there is no evidence that Defendants engaged in any act of encouragement of infringement or any act that they intended to cause direct infringement by another. <u>First</u>, there is no evidence in the record that Holophane Europe, Holophane Mexico, and Arizona (Tianjin) had pre-suit knowledge of the patents, or that they performed any post-suit actions that evidence affirmative intent to cause direct infringement. Given that they do not undertake any activity in the United States nor direct any activity towards the United States with respect to the Accused Products, it is not surprising that Ultravision appears to have abandoned its claims with respect to these three defendants. Dkt. 114 at p. 1.

Likewise, there is nothing in the evidentiary record to which Ultravision can point to support its allegation that Acuity Mexico encourages Acuity or any other third party to actually infringe the Asserted Patents. Ultravision is likely to argue that Acuity Mexico is an indirect infringer based on its assembly of the Accused Products in Mexico. However, Acuity Mexico's mere assembly of the Accused Products in Mexico and at the direction and control of Acuity does not amount to an act of encouragement or an intention to cause Acuity to infringe. Acuity Mexico's limited

16

involvement, which includes only receiving components, assembling them into products based on instructions from Acuity and, then, providing the products to Acuity in Mexico, are inconsistent with this Court's interpretation of actively inducing a direct infringer, which require that affirmative steps must be taken to influence or lead someone to infringe. *Corydoras Techs., LLC v. Apple Inc*., 2:16-CV-00538-JRG, 2016 WL 9242435, at *1 (E.D. Tex. Nov. 23, 2016).

Acuity Mexico is a maquiladora that manufactures and assembles according to a manufacturing services agreement.[42]   Acuity -- not Defendant Acuity Mexico -- at all times maintains ownership of the products manufactured under the agreement, both as unassembled components and as finished goods.[43]   Acuity not Defendant Acuity Mexico acquires, owns, and bears the risk of loss of the components sent to Acuity Mexico's facilities and the produced finished goods.[44]   Acuity Mexico does not control the activities of any subsidiary or affiliated corporate entity in the United States with respect to any products made, sold, offered for sale, or imported into the United States.[45]   These material facts are not subject to a reasonable dispute. Acuity Mexico is not the alter ego of Acuity.[46]

---

[42] Lane Decl. at ¶¶ 7-8 & Ex. A; Dkt. 27-2, Javier Gonzalez Decl. at ¶¶ 3 (resubmitted as Richeson Decl. Ex. 13).

[43] Lane Decl. at ¶ 6.

[44] ████████████████████████████████████████████████████

[45] ████████████████████████████████████ Dkt. 27-2, Javier Gonzalez Decl. at ¶¶ 9 (resubmitted as Richeson Decl. Ex. 13).

[46] Ultravision alleged in its Opposition Response to the Motion for Summary Judgment of Personal Jurisdiction (Dkt. 122 at p. 14) that Acuity Mexico and Acuity are alter egos of one another. ████████████████████████████████████████████████████████████████████████████████████████████████████

Courts have considered a variety of factors in determining what actions constitute active steps of encouragement. *See e.g., Barry v. Medtronic, Inc*., 914 F.3d 1310, 1334 (Fed. Cir. 2019) (technical support for customers); *Tinnus Enters., LLC v. Telebrands Corp.,* 846 F.3d 1190, 1204 (Fed. Cir. 2017) ("instruction manuals" that taught infringing uses); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1379 (Fed. Cir. 2005) (advertising an infringing use; instructing how to engage in an infringing use; technical support in the form of emails and technical presentations were identified as potential evidence of steps to encourage direct infringement; and site visits to provide support).  The comparable activity alleged here is:

- "advising or directing customers, installers, and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or providing manuals, guides, installation instructions and other documentation that guide end-users to use the accused products in an infringing manner" and

- "making or selling the accused products outside of the United States for importation into or sale in the United States, . . . and directing, facilitating, or influencing its intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner."

*See, e.g*., Dkt. 22, Am. Compl. at ¶ 39.  However, there is no evidence that Acuity Mexico engages in any of the conduct described above, much less direct that activity to the U.S.  To the contrary, the indisputable evidence is that Acuity Mexico merely assembles components into products at the instruction and control of Acuity.  There is no evidence that it interacts with or encourages any activity by "customers, installers, and end-users" of the Accused Products.  And while Acuity Mexico is aware that the products it assembles will be imported by Acuity based on the maquiladora regulations, that does not amount to "directing, facilitating, or influencing its intermediaries, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the accused products in an infringing manner."



These conclusory allegations do not support a genuine issue of material fact. _Zelinski,_ 185 F.3d 1311, 1317 (Fed. Cir. 1999).

Consistent with _Celotex Corp._, the lack of evidence identifying any active steps by Acuity Mexico (or the other Defendants) to induce infringement warrants summary judgment of no indirect infringement appropriate. _Celotex Corp._ 477 U.S. at 325 ("the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

## VII.   CONCLUSION

Ultravision cannot show a triable issue of fact that Defendants infringe directly or indirectly. Based on the undisputed factual record, and for all of the reasons set forth above, Defendants respectfully request that this Court enter summary judgment under Fed. R. Civ. P. 56(a) dismissing Ultravision's claims against them for non-infringement.

November 23, 2020                     Respectfully submitted,

                                      /s/ Matthew S. Yungwirth
                                      Matthew S. Yungwirth
                                      msyungwirth@duanemorris.com
                                      Glenn D. Richeson
                                      gdricheson@duanemorris.com
                                      **DUANE MORRIS LLP**
                                      1075 Peachtree Street, Suite 2000
                                      Atlanta, Georgia  30309
                                      Telephone:  (404) 253.6900
                                      Facsimile:  (404) 253.6901

                                      Melissa Richards Smith (TBN 24001351)
                                      melissa@gillamsmithlaw.com
                                      **GILLAM & SMITH, LLP**
                                      303 South Washington Avenue
                                      Marshall, TX 75670
                                      Telephone:  903-934-8450
                                      Facsimile: 903-934-9257

                                      Gilbert A Greene
                                      BGreene@duanemorris.com
                                      **DUANE MORRIS LLP**
                                      900 S. Capital of Texas Hwy.
                                      Suite 300
                                      Austin, TX 78746-5435
                                      Telephone:  713-402-3946
                                      Facsimile:  713-513-3583

                                      *Counsel for Defendants Holophane Europe Limited,*
                                      *Acuity Brands Lighting De Mexico S De RL De CV,*
                                      *Holophane, S.A. De C.V., and Arizona (Tianjin)*
                                      *Electronics Products Trade Co., LTD.*



**CERTIFICATE OF SERVICE**

I certify that on November 23, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Melissa R. Smith*
Melissa R. Smith