**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, <br><br>              Plaintiff, <br><br> v. <br><br> HOLOPHANE EUROPE LIMITED, ACUITY BRANDS LIGHTING DE MEXICO S DE RL DE CV, HOLOPHANE S.A. DE C.V., and ARIZONA (TIANJIN) ELECTRONICS PRODUCTS TRADE COMPANY, LTD., <br><br>              Defendants. | Case No. 2:19-cv-00291-JRG-RSP <br><br> **JURY TRIAL DEMANDED** <br><br> ▮▮▮▮▮▮▮▮▮▮ |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**OPPOSED MOTION TO STRIKE PORTIONS OF THE REBUTTAL EXPERT REPORT**
**OF MICHAEL N. GERSHOWITZ, PE REGARDING NON-INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND............................................................................6

III.  ARGUMENT ....................................................................................................9

     A.    MR. GERSHOWITZ'S REBUTTAL OPINIONS ARE HELPFUL TO
          THE FINDER OF FACT ..................................................................... 10

     B.    ULTRAVISION'S MOTION TO STRIKE IS WITHOUT MERIT ................... 14

IV.   CONCLUSION.................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012) .......................11

*Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-01015-JRG-RSP, Dkt. No. 235
    (E.D. Tex. May 30, 2017) (Payne, J.) ......................................................................13

*BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-cv-903-JRG, 2016 WL 367251
    (E.D. Tex. Jan. 29, 2016) ........................................................................................10

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ...........................................9

*EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81 (D. Del. 2016) ................................. 14-15

*Exergen Corp. v. Wal- Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ..................................15

*GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2020 WL 3893697
    (E.D. Tex. July 9, 2020) (Payne, J.) .........................................................................13

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................................9

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM,
    2017 WL 4020591 (E.D. Tex. Sept. 13, 2017) .........................................................14

*SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-48, 2012 WL 3112302
    (E.D. Tex. July 30, 2012) (Love, J.) ........................................................................11

*SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480 (E.D. Tex. 2013) ...............................15

*United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) .......................................... 9-10

*Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.*, 4:18-CV-469, 2020 WL 1983087
    (E.D. Tex. Apr. 27, 2020) ........................................................................................12

**Other Authorities**

Fed. R. Evid. 702 .........................................................................................................9

## I.      INTRODUCTION

Ultravision's Motion is based on the misnomer that Mr. Gershowitz, Defendants' non-infringement expert, is offering opinions that the terms "display surface" (construed by the Court as "sign surface") and "area" have minimum size requirements.  That is plainly not true — Mr. Gershowitz did not offer any such opinion.  Instead, Mr. Gershowitz offered opinions rebutting and challenging the opinions and testing methodology used by Ultravision's expert, Dr. Coleman, according to which Dr. Coleman measured only a small sub-section of the Accused Products' illumination output, as alleged support for his opinion that the products uniformly illuminate a "sign surface" or "area."  Accordingly, the experts' disagreement is not whether the claimed "sign surface" and "area" have minimum sizes; the disagreement is whether Dr. Coleman's testing methodology and results support his opinion that the Accused Products are configured to uniformly illuminate a "sign surface" or "area," as required by the claims.

For context, Dr. Coleman contrived a test methodology whereby he: (i) oriented the accused products in a manner for which they are not designed and that would void the warranties of the KAX and RSX products; (ii) selected a small sub-section of the area that they illuminated, approximately 1/10 of the overall illumination pattern; (iii) measured the illumination only in the sub-section of the area, and (iv) hid the remaining illumination through the use of a light absorbing Duvetyne fabric in his physical tests or failed to disclose the remaining illumination from his simulation tests.  Examples of his simulated test results for the RSXF1 and physical test results for the RSX1 products follow, respectively:



.[1] Through this flawed and misleading methodology, Dr. Coleman intends to argue to the jury that the Accused Products produce even illumination on a "sign surface" or an "area", while at the same time hiding from the jury the facts

---

[1] Declaration of Glenn Richeson (Richeson Decl.) in support of Defendants' Response In Opposition To Plaintiff's Opposed Motion To Strike Portions Of The Rebuttal Expert Report Of Michael N. Gershowitz, Ex. 2, Expert Report of Dr. Zane Coleman Regarding Infringement (Coleman Rep.) Excerpts of Attachment D (Coleman Rep. Att. D) at pgs. 31-32 and 36.

that (i) he cherry picked a sub-section of the actual illuminated area that is many times larger; (ii) the crisp edges in his photo are created through his use of the Duvetyne fabric, not the actual illumination pattern; and (iii) the "area" is not evenly illuminated.

      To be clear, ██████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████ In the real world, the test set-up and illumination pattern look very different, as illustrated by Mr. Gershowitz's testing, such as depicted at ¶ 239 of his Report (reproduced to the right).  This real world testing is what Ultravision seeks to strike because it plai████████████████████████████████████████████ are not configured to direct uniform illumination in accordance with the Asserted Claims.  This is readily apparent by comparing Mr. Gershowitz's real world simulated and physical test results to Dr. Coleman's manipulated test results that use Duvetyne light absorbing fabric to hide the actual illumination patterns (physical tests) or disregard the illumination outside of the artificially constrained test sub-section he selected.  For example, the actual illumination patterns produced by ██████████████████████████████████████ products are depicted in Mr. Gershowitz's simulations depicted below (where the dotted rectangular box represents Dr. Coleman's artificially constrained test sub-section):



Gershowitz Rep. Exhibit D, at pgs. 3, 15.[2]  There can be no dispute that the "area[s]" illuminated by the KAX 1 and RSX 1 are not configured to illuminate the small rectangular sub-section selected by Dr. Coleman, nor to illuminate an area or sign surface without "creat[ing hot spots or result[ing] in dead spots," as reflected by the different colors that show different intensities of light within the illuminated area.

The same is true for the Accused Sign-Vue LED II (SVLED II) product that produces a similar illumination pattern (where the dotted rectangular box again represents Dr. Coleman's artificially constrained test sub-section):



Again, it is beyond dispute that the Accused SVLED II product is not configured to illuminate the dotted rectangular sub-section and it creates noticeable

---

[2] Richeson Decl., Ex. 1, Rebuttal Expert Report of Michael N. Gershowitz Regarding Non-Infringement (Gershowitz Rep.) Exhibit D (Gershowitz Rep. Ex. D) at pgs. 3 and 15.

[3] Richeson Decl., Ex. 1, Gershowitz Rep. Ex. D at pg. 1.

unevenness in the overall illumination it produces.

Mr. Gershowitz's rebuttal testing and opinions that are the subject of this Motion, establish the flaws in Dr. Coleman's analysis.  When the cloak is removed from Ultravision's arguments, it becomes clear that Ultravision's Motion — while packaged as addressing a contradictory or waived claim construction — actually is intended to hide from the jury the flaws in its expert's testing methodology.

## II.    FACTUAL BACKGROUND

Plaintiff's expert, Dr. Coleman, offered opinions in his expert report that Defendants infringe claims 10, 11, and 14 of U.S. Patent No. 8,870,410 (the "'410 Patent") and claim 1 of U.S. Patent No. 8,870,413 (the "'413 Patent") in connection with the SVLED LED II product and infringe claims 1-6, 8-10, 12-14 and 16-17 of U.S. Patent No. 10,223,946 (the "'946 Patent") in connection with the KAX, RSX, and RSXF products.[4]

The SVLED II is a billboard light designed to work with a second or third SVLED II to illuminate billboards.[5]  The KAX and RSX products are parking lot and street light LED luminaires that are designed, marketed and sold to be mounted on a pole 18-40 feet above the ground and meet certain roadway light distribution patterns established by the Illuminating Engineering Society of America (IES).[6]

Each of the asserted independent claims for the '410 and '413 Patents require that a plurality of lenses or optical elements are "configured to direct light from that LED toward the display surface" and the "light intensity from each lens is substantially uniform across the entire display surface" ('410 Patent at claim 10), or "a ratio of the average illumination from that LED

---

[4] Richeson Decl. Ex. 3, Coleman Rep. at ¶¶ 142, 150.

[5] Richeson Decl. Ex. 4, Gershowitz Rep. at ¶137.

[6] Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 58, 158-159, 161, 231.

across the entire display surface to the minimum illumination from that LED at any point on the display surface is 3:1" ('413 Patent at claim 1). The Court has construed "display surface" to mean "sign surface" and "substantially uniform to mean "level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots." Dkt. 111 at pgs. 20-21 and 48.[7]

Likewise, the only asserted independent claim for the '946 Patent requires the light assembly "is configured to direct light from the LEDs towards an area in a manner that does not create hot spots or result in dead spots on the area." '946 Patent at claim 1. ███████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████

Dr. Coleman offered opinions on only specific versions of the Accused Products and he tested their optical and visual performance.[10] For the KAX and RSX products that are designed to be pole mounted 18 to 40 feet above a parking lot or road, Dr. Coleman rotated the products upward and directed them toward a 5.5 x 11 feet screen, he characterizes as a junior poster billboard. *See*

---

[7] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[8] Richeson Decl. Ex. 6, Coleman Rep. Att. C at pgs. 16-17; Richeson Decl. Ex. 2, Coleman Rep. Att. D at pgs. 29-30.

[9] Richeson Decl. Ex. 3, Coleman Rep. at ¶¶ 156-157; Richeson Decl. Ex. 6, Coleman Rep. Att. C at pg. 17; Richeson Decl. Ex. 2, Coleman Rep. Att. D at pgs. 29-30.

[10] Richeson Decl. Ex. 3, Coleman Rep. at ¶¶ 127, 171-174.

*also e.g.,* Richeson Decl. Ex. 6, Coleman Rep. Att. C, pg. 25 (obscures partial view of the light fixture orientation depicted).[11]   As Mr. Gershowitz explained, Dr. Coleman's test set-up was flawed for numerous reasons including, among others, that:

- it would have voided the warranty for the KAX and RSX products for failing to comply with their specification sheets and/or instructions because those products are designed to be pole mounted, direct light downward, and can be adjusted at most 80 to 90 degrees up, respectively (Richeson Decl. Exs. 6 and 2, Coleman Rep., Atts. C and D; Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 161, 185, 187, 228, 231); and

- ███████████████████████████████████████████████████

Of greater importance to this Motion, Dr. Coleman's testing placed the KAX, RSX and SVLED II products approximately 5 feet from a surface to be illuminated surface, where he measured light intensity only in a small, artificially bounded sub-section, rather than the actual area the products illuminated.[12]   Dr. Coleman used black Duvetyne fabric that is known for absorbing light, and placed it around the screen to hide the actual illumination in his physical tests.[13]   Likewise, he provided computer simulated tests in which he limited his disclosure of the results to the similarly-sized sub-section of the illuminated area.[14]

To rebut Dr. Coleman's opinions, Defendants' expert, Mr. Gershowitz, replicated Dr. Coleman's physical testing of the KAX and RSX products without the light absorbing Duvetyne

---

[11] Notably, Dr. Coleman did not include pictures of the actual physical demonstration test setup for the Accused Products in this case despite including pictures of the actual physical demonstration test setup for ███████████████████████.

[12] Richeson Decl. Ex. 3, Coleman Rep. at ¶¶ 127, 171-174; Richeson Decl. Ex. 7, Coleman Rep. Att. E; Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 133-136, 192-194.

[13] Richeson Decl. Ex. 3, Coleman Rep. at ¶ 171; Richeson Decl. Ex. 4, Gershowitz Rep. at ¶ 198.

[14] *See e.g.,* Richeson Decl. Exs. 6 and 2, Coleman Rep. Atts. C and D.

fabric, using the test criteria identified in Dr. Coleman's report.[15]  Mr. Gershowitz also replicated each of the simulation tests Dr. Coleman conducted for the Accused Products with the entire illumination depicted, rather than limiting the results to the 5.5 x 11 feet sub-section that Dr. Coleman used.[16]

## III.   ARGUMENT

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

District courts have broad discretion in making Rule 702 determinations. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").  Generally, the factors that direct the trial court to consider as its ultimate inquiry are whether the expert's testimony is sufficiently reliable, relevant, and non-prejudicial to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

---

[15] Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 224-241.

[16] Richeson Decl. Ex. 1, Gershowitz Rep. Ex. D.

## A.     MR. GERSHOWITZ'S REBUTTAL OPINIONS ARE HELPFUL TO THE FINDER OF FACT

The standard cited by Ultravision and articulated in *BMC Software, Inc. v. Servicenow, Inc.*, is that an expert's testimony must be "sufficiently reliable and relevant to be helpful to the finder of fact" to warrant admission at trial. *BMC Software, Inc. v. Servicenow, Inc.*, No. 2:14-cv-903-JRG, 2016 WL 367251, at *1 (E.D. Tex. Jan. 29, 2016) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).  Mr. Gershowitz's opinions plainly meet this standard as they are clearly relevant, rebuttal opinions, and Ultravision has not alleged that they are unreliable.

Ultravision alleges that paragraphs 132-139, 195-201, 215-220, 222, 228, 232-233, 236, and 239 impose a minimum size requirement on the terms "sign surface" and "area." Dkt. 126 at pg. 5.  Contrary to Ultravision's assertion, the identified paragraphs do not introduce any minimum size limitations for the terms "sign surface" or "area."  Instead, the paragraphs provide context to the finder of fact on the flaws in Mr. Coleman's testing methodology and explain why that testing does not support his infringement opinion for the Accused Products.

Dr. Coleman's entire infringement opinion for the Accused Products rests upon a showing that the Accused Products are capable of uniformly illuminating an artificially determined and constrained sub-section of their illumination output, even though they plainly are not configured or designed to uniformly illuminate that sub-section.  The paragraphs of Mr. Gershowitz report that Ultravision seeks to strike, expose this flawed testing methodology by illustrating the actual area illuminated by the Accused Products and explaining why these products are not "configured to" illuminate a "sign surface" or "area."  In short, the paragraphs identified by Ultravision in their Motion, highlight the absurdity of Dr. Coleman's opinion, which amounts to: any light that is merely "capable of" illuminating an arbitrarily selected rectangular area, infringes the Asserted Patents.  Richeson Decl. Ex. 8, Gershowitz Deposition (Gershowitz Dep.) at 112:3-12 ("otherwise,

we could take a -- any flood light with any pattern and carve out some smaller rectangular space and say, look, it's illuminating that uniformly or evenly or whatever. But it's absurd because maybe 80 percent of the light goes beyond that area.").

Mr. Gershowitz opinions in the above-identified paragraphs reflect that every independent Asserted Claim includes a "configured to" limitation.  Mr. Gershowitz's opinions reflect a plain and ordinary meaning of "configured to", as would be understood by a person of ordinary skill in the art (POSITA) in the context of the Asserted Claims that is consistent with the specification and is akin to designed to.[17] *See also* Richeson Decl. Ex. 8, Gershowitz Dep. at 98:14-99:13 ("from the perspective of a POSITA, the notion of "configured to" versus "designed to" is a question of are you designing the luminaire or are you using the luminaire" . . . "configured here is speaking of how the luminaire is designed."); '410 Patent at 2:61-64 (the specification emphasizes problems with light that does not strike the display surface becomes wasted illumination (*e.g.,* light pollution)).  This interpretation for the plain and ordinary meaning of "configured to" is consistent with this Court's interpretation of that term.  *SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-48, 2012 WL 3112302, at *11 (E.D. Tex. July 30, 2012) (Love, J.) ("[T]he claims mandate that the devices are 'configured to' perform particular functions. Interpreting 'configured to' as requiring only mere capability would eliminate any meaningful limits to the claims. Accordingly, the Court finds that 'configured to' means 'actually programmed or equipped with hardware or software to.'"); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (noting the phrase "configured to" has a narrower meaning than merely "capable of" or "suitable for"; "the phrase 'adapted to' is most naturally understood to mean that the arms and magnetic members are designed or *configured to* accomplish the specified objective, not simply that they can be made to

---

[17] Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 129, 139, 173-174.

serve that purpose"); *Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.*, 4:18-CV-469, 2020 WL 1983087, at *20 (E.D. Tex. Apr. 27, 2020) (holding "configured to" means more than "capable of" in construing "configured to" as "actually programmed to").

It is notable that Ultravision and Dr. Coleman have previously articulated to this Court the very same understanding of the "configured to" limitations. In their Claim Construction Reply Brief, Ultravision noted that "[a] lighting designer has the ability to select the area that he or she wishes to be lit evenly, and to select a fixture designed to light that area appropriately." Dkt, 99 at pg. 10. *See also e.g.,* Dkt. 96 at pg. 30, citing the Expert Declaration of Dr. Coleman in support of Claim Construction ("The designer would understand that manufacturers provide information on how the apparatuses should be installed, and that the ratio is that which the lighting apparatus is designed to provide when installed and used according to the manufacturer's instructions, guidelines, and/or recommendations.").

All of Mr. Gershowitz's opinions identified in Ultravision's Motion are relevant to the fact finder in determining whether the Accused Products are configured in the manner required by the claims.  Mr. Gershowitz provides opinions at paragraphs 132-139 that the testing conducted by Dr. Coleman for the SVLED II has numerous flaws and shows that the product was not configured or designed to illuminate the 5.5. x 11 feet junior poster board used by Dr. Coleman in his testing.[18] Mr. Gershowitz opines in paragraphs 195-201, that Dr. Coleman selected an artificially small sub-section (of the illuminated area) in which to measure lumen levels.[19]  Indeed, Mr. Gershowitz notes that if "the KAX and RSX luminaries were configured or designed to direct light to the "area" measured by Dr. Coleman, the level of wasted light that extends off the edges of the junior poster

---

[18] Richeson Decl. Ex. 4, Gershowitz Rep. at ¶¶ 132-139.

[19] *Id.*at ¶¶ 195-201

board would not overwhelm the light that falls within the dimensions of the junior poster board."[20] Mr. Gershowitz opines in paragraphs 215-220 and 222 that "the RSXF products are designed to produce a specific illumination pattern that is matched to an optic; not to illuminate an area" "which creates noticeable unevenness when one takes into account the entire illumination provided by the light."[21]  Finally, in paragraphs 228, 232-233, 236, and 239 Mr. Gershowitz recreates the physical test of the KAX and RSX products and details, and unlike Dr. Coleman actually shows, how the KAX and RSX are not designed to illuminate the junior poster board that Dr. Coleman tested.[22]  Instead, they are designed to be positioned 18-40 feet mounted on a pole to emit a specific illumination pattern consistent with the IES.

Mr. Gershowitz's report offers opinions that a POSITA, who reads the Asserted Claims in light of the specification for the Asserted Patents, would understand the claimed lighting assembly is designed to uniformly illuminate a sign surface or area; rather than a small sub-section of an area that actually is illuminated area.[23] Through his testimony, Mr. Gershowitz does not opine that all of the claims require a minimum size; instead, he offers the rebuttal opinion that the sub-section to which Dr. Coleman points is not the actual area illuminated by the Accused Product, as shown

---

[20] *Id.* at ¶201.

[21] *Id.* at ¶¶ 215-220, 222

[22] *Id.*at ¶¶ 228, 232-233, 236, and 239

[23] *See GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2020 WL 3893697, at *2 (E.D. Tex. July 9, 2020) (Payne, J.) (finding ¶¶ 76-80 of Dr. Claypool's report constituting typical non-infringement analysis, as Dr. Claypool was simply describing claim limitations and opining on what a POSITA would consider the plain meaning); *see also Biscotti Inc. v. Microsoft Corp.*, Case No. 2:13-cv-01015-JRG-RSP, Dkt. No. 235 at *3 (E.D. Tex. May 30, 2017) (Payne, J.) (finding defendant's expert's testimony a non-infringement opinion and proper for the jury, as he opined that a person of skill in the art would not find the accused product meets the "captured video stream" limitation).

by, among other things, the amount of illumination outside of the artificially small rectangle selected by Dr. Coleman.

### B.     ULTRAVISION'S MOTION TO STRIKE IS WITHOUT MERIT

Mr. Gershowitz does not "deviate impermissibly" from the Court's Claim Construction Order as alleged by Ultravision.  To the contrary, Ultravision disagrees with the appropriate rebuttal opinions of Mr. Gershowitz and is using this Motion, as a way to preserve the contrived testing methodology of its own expert.

Furthermore, the cases cited by Ultravision are inapposite.  Ultravision cites *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, for the proposition that "[e]xpert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury."  *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *3 (E.D. Tex. Sept. 13, 2017) (citing *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016)).  The holding in *Network-1 Techs., Inc.* simply is not relevant the present dispute over Mr. Gershowitz's opinions that rebut deficiencies in Dr. Coleman's testing methodologies and opinions.  The Court in *Network-1 Techs., Inc.* found that opinions related to how the construed terms operate that have support in the claim language and specification, are not inconsistent with the court's claim construction. *Network-1 Techs., Inc.*, 2017 WL 4020591, at *6 ("To the extent Dr. Knox opines that detection must happen during (contemporaneously with) start up, Defendants have not demonstrated any inconsistency with the Court's claim construction. As Plaintiff notes, this opinion finds support in the claim language and specification.). Mr. Gershowitz's opinions on the testing conducted by Dr. Coleman are clearly supported in the claim language and specification, as noted by this Court in the Claim Construction Order related to the "display surface" term. Dkt. 111 at pgs. 47-48 (citing '410 Patent 6:47-52 ("It is understood that various standard configurations of the lighting assembly 11 may be

14

developed for various billboard and/or other externally illuminated *sign* so that a particular configuration may be provided based on the parameters associated with a particular billboard and/or externally illuminated *sign*.).

Likewise, in citing, *Exergen Corp. v. Wal- Mart Stores, Inc.*, Ultravision incorrectly assumes that Mr. Gershowitz is contradicting the Court's Claim Construction for the "sign surface" and "area" terms. Dkt. 126 at pg. 4; *Exergen Corp. v. Wal- Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Ultravision cites to Mr. Gershowitz's deposition testimony regarding the overall goals of the invention, as support for its argument. Dkt. 126 at pg. 6. As discussed above, Mr. Gershowitz's offered opinions related to the "configured to" claim language in the Asserted Claims, that do not contradict the "sign surface" and "area" terms. Furthermore, "[w]hen a court does not construe a term or orders that ordinary meaning applies, expert testimony on the understanding of a skilled artisan is appropriate to assist the jury. *See e.g, EMC Corp.*, at 109. Additionally, opinions regarding the specification or related embodiments amounts to nothing more than educating the jury about the teachings of an asserted patents. *SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 492 (E.D. Tex. 2013) ("expert's testimony regarding the preferred embodiments amounted to nothing more than an effort to educate the jury about the teachings of the ... patent").

Ultravision has not presented case law that would compel this Court to strike Defendants' rebuttal expert testimony concerning Dr. Coleman's testimony.

## IV.   CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court deny Ultravision's motion to strike portions of the rebuttal expert report of Mr. Gershowitz regarding non-infringement.

December 14, 2020

Respectfully submitted,

/s/ *Matthew S. Yungwirth*
Matthew S. Yungwirth
msyungwirth@duanemorris.com
Glenn D. Richeson
gdricheson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  (404) 253.6900
Facsimile:  (404) 253.6901

Melissa Richards Smith (TBN 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone:  903-934-8450
Facsimile: 903-934-9257

Gilbert A Greene
BGreene@duanemorris.com
**DUANE MORRIS LLP**
900 S. Capital of Texas Hwy.
Suite 300
Austin, TX 78746-5435
Telephone:  713-402-3946
Facsimile:  713-513-3583

*Counsel for Defendants Holophane Europe Limited,*
*Acuity Brands Lighting De Mexico S De RL De CV,*
*Holophane, S.A. De C.V., and Arizona (Tianjin)*
*Electronics Products Trade Co., LTD.*



**CERTIFICATE OF SERVICE**

I certify that on December 14, 2020, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to all counsel

of record.

/s/ *Melissa R. Smith*
Melissa R. Smith