**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOLOPHANE EUROPE LIMITED, ACUITY BRANDS LIGHTING DE MEXICO S DE RL DE CV, HOLOPHANE, S.A. DE C.V., AND ARIZONA (TIANJIN) ELECTRONICS PRODUCTS TRADE CO., LTD.,<br><br>Defendants. | Case No. 2:19-cv-00291-JRG-RSP (LEAD CASE)<br><br>**JURY TRIAL DEMANDED**<br><br>██████████████ |
| ULTRAVISION TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>YAHAM OPTOELECTRONICS CO., LTD.,<br><br>Defendant. | Case No. 2:19-cv-00398-JRG-RSP (CONSOLIDATED CASE)<br><br>**JURY TRIAL DEMANDED**<br><br>██████████████ |

**PLAINTIFF ULTRAVISION TECHNOLOGIES, LLC'S RESPONSE**
**IN OPPOSITION TO YAHAM OPTOELECTRONICS CO., LTD.'S**
**MOTION FOR SUMMARY JUDGMENT REGARDING**
**NONINFRNGEMENT OF U.S. PATENT NO. 8,870,410 (DKT. 127)**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.   COUNTERSTATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............... 2

III.  RESPONSE TO YAHAM'S STATEMENT OF MATERIAL FACTS .................................. 3

IV.   ULTRAVISION'S COUNTERSTATEMENT OF MATERIAL FACTS .............................. 7

   A.   The Accused Products Equivalently Satisfy the "Acrylic Material" and "Acrylic Material Substrate" Limitations ........................................................................................ 8

   B.   Each LED of the Accused Products Illuminates a Display Surface with a 3:1 Ratio of Average to Minimum Illumination ............................................................................. 9

   C.   Each LED of the Accused Products produces Even Illumination Without Hot Spots or Bright Spots ..................................................................................................... 9

V.    LEGAL STANDARDS .......................................................................................... 10

   A.   Summary Judgment ............................................................................................ 10

   B.   Doctrine of Equivalents ..................................................................................... 11

   C.   Waiver of Claim Construction Arguments .......................................................... 11

VI.   ARGUMENT ...................................................................................................... 11

   A.   Yaham's ███████████ Equivalently Satisfy "Acrylic Material" Limitations ........ 11

   B.   There is a Genuine Dispute of Material Fact over whether The Accused Products illuminate a surface with a uniformity ratio of 3:1 ......................................................... 16

   C.   Each LED of the Accused Products Evenly Illuminates a Display Surface ................ 20

VII.  CONCLUSION .................................................................................................... 23

CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL ............................................ 24

CERTIFICATE OF SERVICE ........................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ............................................................. 10

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008) ........................................ 18

*Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1341 (Fed. Cir. 2007) ................................................................................................................................................. 14

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) ..................................................................................................... 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 725 (2002) ................. 11

*Flexuspine, Inc. v. Globus Medical, Inc.*, No. 6:15-cv-201-JRG-KNM, 2016 WL 9279998, at *7 (E.D. Tex. July 7, 2016) ............................................................................................................... 13

*Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) .................................................. 10

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:18-CV-00298-JRG, 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019) .................................................................................................... 11

*Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 889217, at *2 (E.D. Tex. Mar. 8, 2016) .............................................................................................................. 11

*Music Choice v. Stingray Digital Group Inc.*, 216CV00586JRGRSP, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019) .................................................................................................................... 17

*Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) .................................. 10

*Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) ..................... 11

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................................ 10

Plaintiff Ultravision Technologies, LLC ("Ultravision" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Response in Opposition to Yaham Optoelectronics Co., Ltd.'s ("Defendant" or "Yaham") Sealed Motion for Summary Judgment Regarding Noninfringement of U.S. Patent No. 8,870,410 (Dkt. 127) (the "Motion"). The Motion should be denied.

## I.    INTRODUCTION

In this Motion, Yaham raises an array of improper claim construction arguments and critiques of Dr. Zane Coleman's methodology. But these arguments are merely factual disagreements with Dr. Coleman's opinions and conclusions. There are genuine disputes of material fact that preclude summary judgment over each of the three limitations at issue in the Motion.

First, there is a genuine dispute over whether the ██████████████ the Accused Products equivalently satisfy the "acrylic material" limitations. Dr. Coleman reliably applies the function-way-result test to find that ███████████ is equivalent to acrylic material based on their substantially similar features and application in optics. The addition of new claims contemporaneously with the Applicant's response to an unrelated objection did not give rise to prosecution history estoppel. Yaham also fails to show any reason it should be allowed to argue a claim construction that it agreed to while knowing of Ultravision's DoE positions, and Yaham's new construction is improper. Accordingly, Yaham both fails to show the absence of any genuine dispute of material fact, and fails to show that prosecution history estoppel limits the application of the doctrine of equivalents to the "acrylic material" terms as a matter of law.

Second, there is a genuine dispute of material fact over whether the accused products illuminate a display with "a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1." Dr. Coleman applies the plain and ordinary meaning of the term, which includes ratios which achieve a ratio (*i.e.* are lower than) 3:1. Yaham's disagreement with Dr. Coleman's

application of the plain and ordinary meaning of the term is a factual dispute that precludes summary judgment. Moreover, having failed to propose any construction at the appointed time, Yaham's new claim construction arguments are both improper and incorrect. Accordingly, Yaham fails to meet its burden for summary judgement.

Finally, there is a genuine dispute of material fact over whether each LED of the Accused Products "evenly illuminates substantially the entire display surface with a substantially equal level of illumination." Yaham argues from the misapprehension that Dr. Coleman's opinions applied only to the Accused Fixtures as a whole, and ignores Dr. Coleman's extensive analysis showing that light output by the fixture was indicative of even illumination from each LED in Yaham's fixtures. Accordingly, a genuine dispute remains as to whether each LED of the Accused Products satisfies this limitation.

Yaham has failed to meet its burden for summary judgment, and the Motion must be denied.

## II.   COUNTERSTATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.      Is there a genuine dispute of material fact regarding whether the ████████ ████ of the Accused Products equivalently satisfy the "acrylic material" limitations of claim 15, and has Yaham satisfied its burden to show that it is correct as a matter of law?

   a.  Did Yaham waive its new claim construction arguments regarding the "acrylic material" terms?

2.      Is there a genuine dispute of material fact regarding whether the Accused Products illuminate a display surface wherein "a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1."

   a.  Did Yaham waive its new claim construction arguments regarding "a ratio of … 3:1"

3.      Is there a genuine dispute of material fact regarding whether each LED of the

Accused Products evenly illuminates a display surface.

### III.    RESPONSE TO YAHAM'S STATEMENT OF MATERIAL FACTS

1.      Claim 15 of the '410 Patent require "an acrylic material substrate comprising a plurality of optical elements comprising the acrylic material."  Ex. A ('410 Patent) at 9:41-42.

**Response**: Undisputed.

2.      The Parties have agreed that "acrylic material" and "acrylic material substrate" mean "material containing primarily acrylates" and "substrate containing primarily acrylate" respectively.  Ex. C at 1 (Parties' agreed-upon constructions to Joint P.R. 4-3 Claim Construction and Prehearing Statement).  The Court agrees.  Ex. B (Markman Order) at 9. **Response**: Undisputed.





6.    Claim 20 of the '410 Patent requires "wherein the uniformity ratio is 3:1" and "wherein a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1" respectively.  Ex. A ('410 Patent) at 10:1-4. **Response:** Undisputed.

7.    Ultravision shows no evidence that the ratio of the average illumination from each of the LEDs of the Accused Products to the minimum illumination is 3:1.  *See* Ex. D-1 (Attachment A to Coleman Report) at 30-39; Ex. D-2 (Attachment B to Coleman Report) at 33-47; Ex. D-3 (Attachment C to Coleman Report) at 23-27. **Response:** Disputed. Ultravision has advanced substantial evidence that the ratio of average to minimum illumination from each LED of the accused products is 3:1, both in the form of Dr. Coleman's opinions, and the documentary evidence and testing that he relied upon.





8.

██████████████████████████

████████████████████████████████

██████████████████████████████████

███████████████████████████████

███████████████████████████████████████

█████████████████████████████████

██████████████████████████████████

9.      Claim 15 of the '410 Patent recites "an acrylic material substrate comprising a plurality of optical elements . . . the plurality of optical elements disposed over the plurality of LEDs . . . the light from each of the LEDs is directed by the acrylic material substrate across the entire area of the display surface so that each LED evenly illuminates substantially the entire display surface with a substantially equal level of illumination from each of the LEDs."  Ex. A ('410 Patent) at 9:41-53. **Response:** Undisputed.

10.     The Court construes the term "substantially equal level of illumination" to mean "level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots."  Ex. B (Markman Order) at 20.  Additionally, the Court construes "substantially the entire display surface" to mean "the entire display surface," and "display surface" to mean "sign surface."  Id. at 30 and 48. **Response:** Undisputed.

11.     Ultravision's expert alleges that "I have determined that light distribution measurements and calculations for one variant of Yaham fixture (e.g. of Compact S, Linear II, Lumiway 2, Lumiway 3, Rana, T-Bar, and/or Tri) are representative of all variants."  Ex. D (Coleman Report) ¶ 136. **Response:** The representativeness of Dr. Coleman's opinions regarding light distribution the Accused Products is not material to any issue raised in the Motion. Yaham also omits relevant portions of Dr. Coleman's opinions the representativeness of his tests.

12.      Ultravision's expert asserts that "I have calculated uniformity characteristics for a representative sample of the above optical distribution types," and that "[b]ased on the IES data I reviewed, it is my opinion that those calculations are representative of all of the above optical distribution types, and that the uniformity characteristics (including ratio of average to minimum uniformity) of other optics would necessarily fall within the range of the ones I for which I calculated a uniformity."  Ex. D (Coleman Report) ⁋ 138. **Response:** Undisputed.

13.      Ultravision's expert concludes that "Each of the LED and lens combinations on each of the Accused Products are configured to generate uniform illumination on a display surface."  Ex. D (Coleman Report) ⁋ 139. **Response:** Undisputed.

14.      ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

**IV.      ULTRAVISION'S COUNTERSTATEMENT OF MATERIAL FACTS**

**A.     The Accused Products Equivalently Satisfy the "Acrylic Material" and "Acrylic Material Substrate" Limitations**

1.      Asserted Claim 15 requires an "acrylic material substrate comprising a plurality of optical elements comprising the acrylic material, the plurality of optical elements protruding out of a major surface of the acrylic material substrate." '410 Patent, Claim 15.

2.      Ultravision originally proposed that acrylic material have its plain and ordinary meaning or be construed as "a material containing acrylate." Ex. C at 9.

3.      Yaham agreed to a slightly modified version of Ultravision's construction, "material containing primarily acrylates." Dkt. 72-1 at 1. The Court entered the agreed construction of "acrylic material" as "material containing primarily acrylates. Dkt. 111 at 9.

4.      Ultravision's infringement contentions disclosed that it contends the "acrylic material" limitations of claim 15 are satisfied through the doctrine of equivalents. Ex. D at 6.

5.      Yaham did not submit any interrogatories or deposition topics regarding Ultravision's doctrine of equivalents position, nor did Yaham otherwise seek discovery regarding Ultravision's doctrine of equivalents position.

6.      ██████████████████████████████████████████
███████████████████████████

7.      Dr. Zane Coleman, Ultravision's technical expert, opines that a POSITA would understand "acrylic material," as construed, to be satisfied by ███████████ materials through the doctrine of equivalents. Ex. A at ¶¶ 150-152.

8.      Neither U.S. Patent Publication No. 2004/0004827 ("Guest") nor U.S. Patent No. 7,896,522, over which the '410 Patent was rejected during prosecution, make any reference to ████████. The March 12, 2014 rejection of the '410 Patent made no mention of any material comprising the optical substrate. Ex. F, March 12, 2014 Rejection at 2-5.

**B.   Each LED of the Accused Products Illuminates a Display Surface with a 3:1 Ratio of Average to Minimum Illumination**

9.      The term "wherein a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1" recited in claim 20 of the '410 Patent was not construed. Yaham did not propose any construction for this term during claim construction. *See* Dkt. 72.

10.     Dr. Coleman opined that the plain and ordinary meaning of the term "wherein a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1" "include[s] average to minimum illumination ratios better (*i.e.* more uniform) than 3:1." Ex. A at ¶ 153. Dr. Coleman opined that this is consistent with "discussion of uniformity ratios in industry," and is confirmed by discussion of "uniformity that achieves a 3:1 ratio" in the specification of the '410 Patent. *Id.* at ¶ 153-154.

**C.   Each LED of the Accused Products produces Even Illumination Without Hot Spots or Bright Spots**

11.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

12.     ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

13.     ████████████████████████████████████████████

████████████████████████████████████████████ on this conclusion, Dr.

9

Coleman opined that the evenness of light emitted from each LED could be determined from the overall light output of a fixture. Ex. A at ¶¶ 144, 147.

14.     Dr. Coleman determined that each LED of the Accused Products provides a level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots based on the light output of the overall fixture. Ex. A at ¶¶ 145, 148; *see also* ¶¶ 132-139, Table 4.

## V.     LEGAL STANDARDS

### A. Summary Judgment

Grant of summary judgment is appropriate only when there is no genuine issue of material fact, such that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment may be granted only when no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

In considering whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of that party. *Id.* at 255; *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). Further, where there are dueling experts, both of whom have put forward opinions in contradiction and when those opinions are important to resolution of a material factual dispute, summary judgment may not be appropriate. *Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) ("The fact issues herein must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination."). If two experts in the field have a reasonable disagreement, then the Court must leave credibility determinations and the weighing of the experts' opinions to the jury. *Id.* at 1142-43. Further, two experts' competing applications of a claim construction is a fact issue to be decided by a jury. *Metaswitch Networks Ltd. v. Genband US LLC*,

No. 2:14-cv-744-JRG-RSP, 2016 WL 889217, at *2 (E.D. Tex. Mar. 8, 2016). "As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015).

### B.     Doctrine of Equivalents

Prosecution history estoppel does not limit the scope of the doctrine of equivalents where an "amendment cannot reasonably be viewed as surrendering a particular equivalent—*e.g.,* where the equivalent was unforeseeable at the time of the application or the rationale underlying the amendment bears but a tangential relation to the equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 725 (2002).

### C.     Waiver of Claim Construction Arguments

"Failure to timely raise ... claim construction arguments should ordinarily result in waiver of the arguments." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) (citing *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007)). Requests for additional claim construction should be denied where a party "could have made [] arguments during the claim construction phase of the case but did not..." *Id.* "[W]here a court has prescribed specific claim construction procedures and the parties have proceeded towards trial in reliance thereon, the court has discretion to preclude parties from injecting 'new claim construction theories on the eve of trial.'" *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:18-CV-00298-JRG, 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019)

## VI.     ARGUMENT

### A.   Yaham's ███████████ Optics Equivalently Satisfy "Acrylic Material" Limitations

The Motion must be denied because there is a genuine dispute over whether the ████████████ lenses of the Accused Products equivalently practice the claimed "acrylic material" limitations. *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015)

("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case."); *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 889217, at *2 (E.D. Tex. Mar. 8, 2016) (holding that experts' competing applications of a claim construction is a fact issue to be decided by a jury). Here, Dr. Coleman applies the Court-ordered construction and opines that the ██████████ lenses of the Accused Products equivalently satisfy the acrylic limitations. Ex. A at ¶¶ 150-152. ████████████



*Id.* at ¶¶ 151-152. Dr. Coleman articulates support for his opinions applying the doctrine of equivalents, and his opinions are well-reasoned. Because a reasonable jury could find infringement based on Dr. Coleman's opinions and the evidence cited, there is a genuine dispute of material fact regarding the acrylic limitations.

Yaham's disagreement with Dr. Coleman's opinions based on differences in the refractive indexes of acrylic and ██████████ merely shows the existence of a genuine dispute. *See Flexuspine, Inc. v. Globus Medical, Inc.*, No. 6:15-cv-201-JRG-KNM, 2016 WL 9279998, at *7

(E.D. Tex. July 7, 2016) ("However, genuine disputes of material fact remain regarding whether Altera's drive nut satisfies the set screw limitation under the doctrine of equivalents. Flexuspine presents evidence of its doctrine of equivalents theory through expert testimony. . . . A genuine dispute of material fact remains regarding whether Altera's drive nut performs substantially the same function in substantially the same way to achieve substantially the same result as the set screw required by the asserted claim. Flexuspine's doctrine of equivalents infringement theory therefore survives summary judgment and may be considered by the jury.") Accordingly, Yaham has failed to meet its burden for summary judgment regarding the "acrylic material" and terms.

In an attempt to address this shortcoming, Yaham argues for the first time that Ultravision is somehow precluded from asserting the doctrine of equivalents. It is not.

**First,** Ultravision is not limited by prosecution history estoppel because the addition of new claims with "acrylic material" limitations "cannot reasonably be viewed as surrendering a particular equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 725, (2002). Contrary to Yaham's suggestion, the acrylic limitations were not added to any rejected claim, nor were they added in response to any rejection. The Applicant added new claims including the acrylic limitations in a June 6, 2015 amendment and response to a rejection over Guest and Heller. *See* Ex. F, June 6, 2015 Amendment at 4-6. But the rejection in view of Guest and Heller did not reference ███████, nor did it concern the lens material at all. *Id.*, March 12, 2014 Rejection at 2-5. Rather, the rejection over Guest and Heller concerned illumination uniformity. *Id.* (Guest discloses a plurality of LEDs disposed on a substrate … wherein the light from each of the LEDs is directed by the transparent substrate across the entire area of the surface … it would have been obvious … to use the configuration of Heller et al. in the apparatus of Guest to light a sign in an even manner.") The rejected claims were allowed after the addition of limitations requiring equal illumination from "each of the LEDs" directing light through "a plurality of optical elements" disposed over the LEDs, not the addition of material limitations. *Id.* at 2.  Claim 10 (then-numbered 11) was similarly allowed

with  the configuration of a lens elements over a corresponding plurality of LEDs, lacking both the lens element limitations of claim 1, and the acrylic material limitation of claim 15. *Id.* at 3. Substantially similar limitations regarding the configuration of LEDs and lens elements are recited in claim 15. *See* Amendment at 4 (then-numbered claim 16 reciting "the plurality of optical elements disposed over the plurality of LEDs and configured to direct light from each of the plurality of LEDs [] onto a display surface … wherein the light from each of the LEDs is directed [] across the entire area of the display surface so that each LED evenly illuminates substantially the entire display surface."). Thus, Claim 15 was allowed based on its limitations regarding illumination and the configuration of optical elements over a plurality of LEDs, not its requirement for acrylic materials.

The acrylic limitations were also tangential to the amendment because a parallel claim reciting ███████████████████ would have been allowable.  There is no disclosure of ███████████ lenses in either Guest or Heller, and such a claim would have been allowed for at least the same reasons as claim 15. Prosecution history estoppel does not limit application of the doctrine of equivalents to ███████████ because the addition of new claims cannot have surrendered claim scope which would have been allowed. *See contra Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1341 (Fed. Cir. 2007).

Because the addition of new claims with acrylic material limitations was not in response to a rejection, because claim 15 was independently allowable based on its requirement for even illumination from each LED, and because "acrylic" and ███████████ would have been interchangeable for purposes of allowability, the addition of acrylic material terms was only tangentially related to the amendment of rejected claims. Thus, the doctrine of equivalents is not limited by prosecution history estoppel.

**Second,** Ultravision is not prohibited from asserting infringement under the doctrine of equivalents because Ultravision's infringement contentions properly disclosed its theory pursuant to P.R. 3-1(d). *See e.g.* Ex. D at 6 ("To the extent the optical elements do not comprise acrylic,

Yaham's products still infringe under the doctrine of equivalents because the accused product, even taking into account any alleged "difference" identified by Defendant, would be substantially similar to the claim limitation. The pertinent feature of the accused products would at a minimum perform substantially the same function of the claim limitation in substantially the same way, to achieve substantially the same result.) Moreover, Yaham has waived any argument that it lacked such notice. Yaham never notified Ultravision of any alleged deficiency in its contentions. Yaham never sought discovery regarding Ultravision's doctrine of equivalents positions during facto discovery, either formally or informally. Yaham has also not moved to strike Dr. Coleman's doctrine of equivalents opinions as untimely or beyond the scope of Ultravision's contentions. Accordingly, Dr. Coleman's show a genuine dispute of material fact regarding the acrylics limitations, and Yaham's attempt to disregard Dr. Coleman's opinions is improper.

**Third**, Dr. Coleman's opinions are consistent with the Court-ordered construction of "acrylic material," and Yaham's new claim construction arguments are improper.

Yaham already waived these new claim construction arguments and should not be allowed to raise them for the first time in this Motion. *See Music Choice v. Stingray Digital Group Inc.*, 2:16-CV-00586-JRG-RSP, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019). ("This Court has stated that a failure to timely raise claim construction arguments should ordinarily result in waiver of the arguments.") (internal citations omitted). Ultravision originally proposed that acrylic material be construed as "a material containing acrylate." Ex. C (P.R. 4-2 Disclosure) at 9. Yaham **agreed** to a slightly modified version of Ultravision's proposal knowing that Ultravision asserted infringement based on the doctrine of equivalents. Dkt. 72-1 at 1. Yaham should be precluded from taking the inconsistent position its agreed construction was incorrect. *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2:15-CV-00011-RSP, 2017 WL 5137401, at *15 (E.D. Tex. Nov. 4, 2017) ("denying additional construction where party "could have made these arguments during the claim construction

phase of the case but did not"). Yaham waived its new claim construction arguments, and should be estopped from raising them now.

Yaham is also incorrect that equivalents of "acrylic materials" are limited by claim differentiation. Yaham relies on a strawman argument that Ultravision's contends any "substantially transparent" material is equivalent to "acrylic material" under the doctrine of equivalents. Dkt. 127 at 7-8. This has never been Ultravision's position, and is not the argument articulated in Dr. Coleman's report. As Dr. Coleman explains, acrylic and ▆▆▆▆▆▆ polymers that are so similar as to be "interchangeable" in lens applications. Ex. A at ¶ 152. Yaham's speculation that Ultravision's theory of infringement of claim 15 would extend to *any* transparent material is therefore unjustified. Accordingly, claim differentiation does not preclude "acrylic material" from equivalently encompassing ▆▆▆▆▆ materials, because that would not render the "acrylic material" of claim 15 coextensive with the "substantially transparent" materials of claim 1.

Thus, because a reasonable jury could find that the ▆▆▆▆▆▆▆ of the Accused Products equivalently satisfy the "acrylic material" limitations, and because Yaham has failed to show that summary judgment is correct as a matter of law, Yaham has failed to meet its burden for summary judgment.

**B.  There is a Genuine Dispute of Material Fact over whether The Accused Products illuminate a surface with a uniformity ratio of 3:1**

There is a genuine dispute of material fact regarding whether the Accused Products illuminate a display surface wherein "a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1." Dr. Coleman applied the plain and ordinary meaning of the term to conclude that the limitation is satisfied by an illumination ratio of 3:1 or better. Yaham's disagreement with Dr. Coleman's opinions is a factual dispute that precludes summary judgment.

Dr. Coleman opines that the ordinary meaning of average to minimum illumination ratios includes better (*i.e.* lower) values. Ex. A at ¶ 153. In particular, Dr. Coleman opines that:

16



*Id.* at ¶¶ 154-155. Dr. Coleman further notes that his application of the plain and ordinary meaning is corroborated by the specification's discussion of uniformity that "achieves" a 3:1 ratio. *Id.* at ¶ 153. Thus, Dr. Coleman properly applied the plain and ordinary meaning of "a ratio of … 3:1" in the context of claim. Dr. Katona's disagreement with Dr. Coleman's application of the plain and ordinary meaning merely shows the existence of a genuine dispute of material fact. *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 889217, at *2 (E.D. Tex. Mar. 8, 2016) (holding experts' competing application construction were "fundamentally a disagreement about whether the accused products practice the claims."); *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) (holding that credibility determinations "must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination"). Because a reasonable jury could find that the Accused Products satisfy this limitation based on Dr. Coleman's expert opinions, there is a genuine dispute of material fact that precludes summary judgment.

Yaham improperly raises claim construction arguments for the first time in an attempt to circumvent Dr. Coleman's opinions. Yaham already waived those arguments. *See Music Choice v. Stingray Digital Group Inc.*, 216CV00586JRGRSP, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019). ("This Court has stated that a failure to timely raise claim construction arguments should ordinarily result in waiver of the arguments.") (internal citations omitted). Yaham had the opportunity to propose a construction for this term, but did not. Accordingly, Yaham agreed that the plain and ordinary meaning governs. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696

(Fed. Cir. 2008) ("The term 'selectively couples' was not construed by the district court because the parties agreed to let the ordinary meaning control.") Yaham should therefore be estopped from arguing that Dr. Coleman's application of the plain and ordinary meaning of "3:1" is improper.

In any case, Yaham is incorrect that the ordinary meaning of a panel "wherein a ratio of the average illumination from each of the LEDs across the entire display surface to the minimum illumination at any point on the display surface from each of the LEDs is 3:1" is limited to "exactly 3:1." Dkt. 127 at 11-12.

First, Yaham improperly conflates the "evenly illuminates" term of claim 15, and the "ratio of … 3:1" term of claim 20. Yaham's argument is based on a misunderstanding that "even illumination" is necessarily satisfied if the 3:1 illumination term is satisfied. It is not. A surface illuminated with bright hotspots could achieve a 3:1 illumination ratio, but would not would not satisfy the "level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots" required for claim 15. Yaham's own claim construction brief acknowledged this. Dkt. 98 at 5. Moreover, even if a 3:1 ratio did inherently satisfy even illumination limitations, there is no reason that claim differentiation would prevent claim 20 from capturing the subset of average to minimum illumination ratios that a POSITA would understand to achieve a ratio of 3:1 or better. Thus, claim differentiation does not require a ratio of "exactly 3:1" as Yaham suggests.

Second, Ultravision does not rely "solely" on the specification's disclosure that a POSITA would understand illumination that "illumination with a uniformity that achieves a 3:1 ratio of the average to minimum" has a ratio of 3:1. Rather, Dr. Coleman's application of the plain and ordinary meaning of 3:1 is confirmed by this portion of the specification. Yaham merely cites to an embodiment in which *even illumination* has a uniformity ratio of 3:1. Nothing in the specification suggests that illumination that achieves a uniformity ratio is limited to a ratio of *exactly* 3:1. Nor is it appropriate to limit all illumination that would otherwise satisfy the plain and ordinary meaning of

"3:1" (*i.e.* 3:1 or better) to exactly 3:1 based on one embodiment disclosed in connection with evenness as opposed to uniformity ratio. Accordingly, while the specification's discussion of illumination that "achieves a 3:1 ratio" confirms Dr. Coleman's opinions, the embodiment of even illumination with a 3:1 average to minimum uniformity ratio is non-limiting.

Third, Yaham fails to identify any lexicography or clear and unambiguous disclaimer of claim scope during prosecution that would limit the ratio of average to minimum illumination to "exactly" 3:1. Instead, Yaham cites to a June 5, 2014 amendment of the related '413 Patent in which the Applicant argued the Office Action did not meet its burden to identify the importance of the ratio as "result-effective variable, i.e., a variable which achieves a recognized result, before the determination of the ***optimum or workable ranges*** of said variable might be characterized as routine experimentation." Ex. G, June 5, 2014 Amendment at 8. (emphasis added). Applicant further argued that "the Office Action fails to point out how this relates to the light distribution from *each LED*." *Id.* In other words, Guest did not teach or disclose how (or why) to achieve a ratio of average to minimum illumination of 3:1 from each LED. Nowhere did the Applicant disavow the plain and ordinary meaning of the 3:1 uniformity ratio, which a POSITA would understand to include ratios better than 3:1.

Finally, the existence the related '248 Patent claiming "a uniformity that achieves at most a 3:1 ratio of the average illumination to the minimum illumination" does not alter the plain and ordinary meaning of the a "ratio of … 3:1" in the '410 Patent. Yaham does not, and cannot, articulate how this claim constitutes a "prosecution disavowal."

Because a reasonable jury could find that the Accused Products satisfy the "ratio of … 3:1" limitation based on Dr. Coleman's expert opinions and the evidence cited, and because Yaham's competing application boils down to a factual dispute regarding infringement, Yaham is precluded from summary judgment.

### C.   Each LED of the Accused Products Evenly Illuminates a Display Surface

Dr. Coleman shows that each of the Accused Products comprise a plurality of LEDs, each of which evenly illuminate the entire display surface. Yaham's disagreement with his opinions merely reflects a genuine dispute of material fact. *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.")

Contrary to Yaham's mischaracterizations, Dr. Coleman opines that each LED of the Accused Products produces a "level of illumination that does not create noticeable unevenness in the overall illumination, such as hot spots or dead spots. Ex. A at ¶ 142. For example, Dr. Coleman notes that

Dr. Coleman concludes that the light emitted by identical LEDs through identical lens elements is the same:



Ex. A at ¶ 145. Having concluded that the light output of each LED-lens combination is the same, Dr. Coleman determined that the even illumination of the fixture of the whole is indicative of the even illumination of each LED:





*Id.* at ¶¶ 144, 147. Because a jury could reasonably rely on Dr. Coleman's opinions to find that each LED evenly illuminates a display, there is a genuine dispute of material fact regarding this limitation. Accordingly, Yaham is precluded from summary judgment.

Yaham misstates Dr. Coleman's opinions and mischaracterizes his report in an attempt to circumvent the dispute. However, Yaham's disagreements with Dr. Coleman's opinions merely show that a genuine dispute exists.

First, Yaham incorrectly suggests that Ultravision relies on Dr. Coleman's measurements as representative "without any basis." To the contrary, Dr. Coleman calculated the light distributions of numerous accused products, and provided detailed explanations as to why they are representative of similar products. Ex. A at ¶¶ 134-139, table 4; *see also* Ex. B at 28-39. The fact that Yaham's

technical expert disagrees with Dr. Coleman's opinions regarding light distributions or the representativeness of his calculations merely shows the existence of a genuine dispute.

Second, Yaham similarly suggests that Dr. Coleman "fails to account" for the position of the Accused Products in his calculations. Again this is false. ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Yaham's argument is also irrelevant because claim 15 does not include any limitation on the position of the illumination source relative to the display surface. To the extent Yaham's argument has any nexus with claim 15, Dr. Katona's disagreement with the parameters that Dr. Coleman used merely shows the existence of a genuine dispute. *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986) ("The fact issues herein must be resolved by trial in which the conflicting views of the experts will be subject to the refining fire of cross examination.")

Finally, Yaham's argument that the display surface Dr. Coleman simulated is too small is incorrect, and inconsistent with the Court's construction. The Court construed "display surface" to mean "sign surface." Dkt. 111 at 45-48. The term "sign surface" does not limit a sign to one the size of a standard 48x14 foot billboard, as Yaham assumes.[1] Moreover, Yaham mischaracterizes Dr. Coleman's measurements as confined to a "small portion" of a larger surface. To the contrary, ████ ████████████████████████████████████████████████ his radiosity calculations are equally applicable to other sized display surfaces, and other numbers of fixtures. Ex. A at ¶ 160. To the extent Yaham's argument includes any valid criticism, however unwarranted, this merely shows a further genuine dispute of material fact.

Thus, there remains a genuine dispute of material fact regarding how each LED of the Accused Products produce even illumination, and Yaham's Motion should be denied.

---

[1] In Dkt. 125, Ultravision moves to strike these improper opinions from Dr. Katona's report for failure to apply the Court's construction.

## VII.   CONCLUSION

For all the foregoing reasons, Ultravision respectfully requests that Yaham's Sealed Motion for Summary Judgment Regarding Noninfringement of U.S. Patent No. 8,870,410 (Dkt. 127) be denied.

Dated: December 14, 2020

Respectfully submitted,

/s/ Alfred R. Fabricant
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@fabricantllp.com
**FABRICANT LLP**
230 Park Avenue, 3rd Floor W.
New York, New York 10169
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***ULTRAVISION TECHNOLOGIES, LLC***



## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2020, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

*/s/  Alfred R. Fabricant*
Alfred R. Fabricant