IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> HOLOPHANE EUROPE LIMITED, ) <br> ACUITY BRANDS LIGHTING DE ) <br> MEXICO S DE RL DE CV, HOLOPHANE ) <br> S.A. DE CV and ARIZONA (TIANJIN) ) <br> ELECTRONICS PRODUCT TRADE CO., ) <br> LTD., ) | Case No. 2:19-cv-00291-JRG-RSP <br> (LEAD CASE) <br><br> **JURY TRIAL DEMANDED** <br><br> ▬▬▬▬▬▬▬▬ |
| YAHAM OPTOELECTRONICS CO., LTD., ) <br> ) <br> Defendants. ) <br> ) | Case No 2:19-cv-00398-JRG-RSP <br> (CONSOLIDATED CASE) <br><br> **JURY TRIAL DEMANDED** <br><br> ▬▬▬▬▬▬▬▬ |

**PLAINTIFF ULTRAVISION TECHNOLOGIES, LLC'S RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
PORTIONS OF DR. ZANE COLEMAN'S EXPERT REPORT REGARDING
INFRINGEMENT THEORIES NO DISCLOSED IN FACT DISCOVERY
AND PLAINTIFF'S ARGUMENT OF THE SAME (DKT. 131)**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................................... 1

    A. Ultravision Properly Accused the RSXF Products of Infringement ....................... 1

    B. Dr. Coleman's Inducement Opinions are Consistent with Ultravision's Allegations .............................................................................................................. 5

III. LEGAL STANDARD ....................................................................................................... 6

IV. ANALYSIS ....................................................................................................................... 7

    A. Ultravision's Infringement P.R. 3-1 Contentions Properly Identified the RSX Family, Including the Accused RSXF Models ............................................... 7

    B. The Factors Weigh against Exclusion of Dr. Coleman's Opinions ........................ 8

        1. Defendants Have Not been Unfairly Prejudiced ......................................... 8

        2. Dr. Coleman's Opinions Regarding the RSXF Models are Important .................................................................................................. 10

        3. Explanation for Any Untimeliness ............................................................ 10

        4. A Continuance is Not Necessary .............................................................. 11

    C. Dr. Coleman's Inducement Opinions Are Proper ................................................. 12

V. CONCLUSION ............................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*,
  No. 9:06-cv-158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ................................................7

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
  CIV.A. 6:08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ..................................7, 12

*Finisar Corp. v. DirecTV Group, Inc.*,
  424 F. Supp. 2d 896 (E.D. Tex. 2006) ....................................................................................10

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008) ......................................................................................6

*Orion IP, LLC v. Staples, Inc.*,
  407 F. Supp. 2d 815 (E.D. Tex. 2006) ....................................................................................10

*S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,
  315 F.3d 533 (5th Cir. 2003) ....................................................................................................7

*Semcon IP Inc. v. ZTE Corp.*,
  2:16-CV-00437-JRG-RSP, 2018 WL 4501808 (E.D. Tex. Feb. 28, 2018) ..............................8

*STMicroelectronics, Inc. v. Motorola, Inc.*,
  308 F. Supp. 2d 754 (E.D. Tex. 2004) ......................................................................................6

*Team Worldwide Corp. v. Acad., LTD*,
  2:19-CV-00092-JRG-RSP, 2020 WL 4601635 (E.D. Tex. Aug. 11, 2020) .............................6

**Statutes**

35 U.S.C. § 271(b) ...........................................................................................................................5

Plaintiff Ultravision Technologies, LLC ("Ultravision") respectfully submits this Response in Opposition to Defendants' Motion to Strike Portions of Dr. Zane Coleman's Expert Report (Dkt. 131). The Motion should be denied.

## I.     INTRODUCTION

This Motion should be denied because Ultravision properly provided notice of the infringement on which Dr. Coleman opined.

First, Ultravision's infringement contentions identified the entire RSX product family, including the RSX. Ultravision defined "RSX LED" based on documents identifying the full RSXF product series, and Ultravision's claim charts included annotated illustrations of an RSXF2. Defendants laid behind the log throughout fact discovery and cannot now contend that this identification was somehow unclear.

Second, Defendants acknowledge that Ultravision properly plead induced infringement. Defendants failed to seek discovery regarding Ultravision's indirect infringement claims, and now seek to use that failure to exclude Dr. Coleman's technical opinions regarding the Accused Products as they relate to induced infringement. But Dr. Coleman's technical opinions are fully supported by his report, and Defendants have been on notice of Ultravision's indirect infringement claims since the outset of this case.

Defendants' failure to raise these issues during fact discovery should not be rewarded, and the Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

### A.     Ultravision Properly Accused the RSXF Products of Infringement

Ultravision's contentions properly accused all models of Defendants' RSX LED products of infringement, including RSXF models. *See* Ex. A at 1 ("at least the claims of [the '946 patent] identified below are infringed by Holophane's RSX LED"). RSXF products are floodlight

versions within the RSX family. *See* Ex. B at 2-9, 28-50. They include the same LED modules as the rest of the RSX family, include a nearly identical housing, and otherwise have the same range of technical specifications the RSX area lights that make up the rest of accused RSX family. *See* Ex. C ¶¶ 154. The sole differences between RSX area and flood lights are the available mounting options, which overlap, and the available lens or "optics" options, which are similar. *Id.* ¶¶ 147-148; *see also* Ex. B at 10-16.

Contrary to Defendants' mischaracterizations, Ultravision's January 28, 2020 infringement contentions accused all "RSX LED" products, including RSXF versions. Ultravision identified both RSX and RSXF models in footnotes defining the "RSX LED." Ex. A at note 1 (video identifying RSXF4 at 1:37, and depicting other floodlight variants throughout, *e.g.* the RSXF2 at 2:48); *id.* at note 2 (identifying RSXF1-4 models at p. 44); *id.* at note 3 (identifying mounts and optics for both RSX and RSXF variants throughout). Ultravision cited the "RSX LED Area and Flood" presentation at note 2 to show that the "RSX LED" products include both "Area and Flood" variants, as discussed throughout the presentation, and as specifically identified at page 44. Ex. D at 44 (UVT-HOLO00000074) (depicted below).



Ultravision's infringement contentions charted RSXF variants of the Accused RSX products in parallel representative RSX area light variants. *See e.g.* Ex. A at 19-22. Defendants'

parent company uses the same images in advertising the "RSX Family" on webpages hosting the spec sheets cited in Ultravision's infringement contentions:[1]



Defendants and their parent company, Acuity Brands Lighting ("ABL"), demonstrated their awareness that the RSXF products were accused during fact discovery. ████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[1] *See* https://www.acuitybrands.com/products/family/rsx. Defendants further acknowledge that the "accused product families in this case" include the RSX. Dkt. 128 at 8.



Defendants did not inform Ultravision of their position that the accused RSX products did not include RSXF models prior to submitting their rebuttal non-infringement report in this action. Contrary to the misleading statements in Defendants' Motion, their Interrogatory Nos. 5 and 13 regarding damages did not request further identification of Accused Products. Ex. I at 7; Ex. J at 7. Nor did Defendants ever seek such identification in correspondence regarding Ultravision's responses to those interrogatories. Nor did Defendants ever contend that the identification of RSX LED products in Ultravision's contentions required supplementation or clarification.

Ultravision proposed supplemental infringement contentions for a number of products not originally accused in this case. Contrary to Defendants' mischaracterization, those contentions did not include the RSXF products because they were already identified in Ultravision's original contentions regarding RSX products. When presented with this demonstration of Ultravision's understanding that the RSXF products did *not* require supplemental identification, Defendants remained silent.

On October 19, 2020, Ultravision submitted the Expert Report of Zane Coleman Ph.D. Regarding Infringement of the Asserted Patents (the "Coleman Report"). Consistent with Ultravision's infringement contentions, ███████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████

### B. Dr. Coleman's Inducement Opinions are Consistent with Ultravision's Allegations

Defendants do not contest that Ultravision's complaint sufficiently plead induced infringement. For example, Ultravision alleged that Acuity Mexico "knowingly and intentionally induces infringement of one or more claims of the '946 Patent in violation of 35 U.S.C. § 271(b), including at least claim 1, by actively encouraging others to make, use, offer to sell, and/or sell within the United States and/or import into the United States products . . . For example, upon information and belief, Defendants sell or otherwise provide products, including but not limited to Defendants' Mongoose LED, to distributors, installers, or U.S.-based sales entities, knowing that these entities intend to make, use, offer to sell, and/or sell the products within the United States." *See* Dkt. 1 at ¶¶ 55-56.

Defendants did not inquire regarding Ultravision's indirect infringement allegations at any time during fact discovery, and served no interrogatories seeking facts regarding induced

5

infringement. Defendants' suggestion that their damages interrogatories requested Ultravision's indirect infringement contentions is simply false. Ex. I at 7; Ex. J at 7. Moreover, Defendants never addressed Ultravision's indirect infringement positions in correspondence regarding those interrogatory responses and did not otherwise request that information during fact discovery.

Dr. Coleman opines that "Defendants import, make, use, offer to sell and/or sell products to and in the United States that comprise all of the elements of the asserted claims of the Patent-in-suit, and/or actively induces their customers to make, use, offer to sell, sell, and/or import products that comprise all elements of the asserted claims." Ex. C at ¶ 142. Dr. Coleman does not opine on Defendants' intent or knowledge and will not present non-technical opinions at trial. Rather, Dr. Coleman opines that the technical elements of the Accused Products satisfy the limitations of the asserted claims, including where the underlying infringement is indirect. *See e.g. id.* at ¶151 ("I understand that Ultravision contends that the accused fixtures infringe the Asserted Claims patent both directly and indirectly.").

### III.   LEGAL STANDARD

Infringement contentions provide defendants with a notice of plaintiff's infringement theories. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008). "Infringement contentions 'are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process.'" *Id.* at 713 (citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)). "Courts have excused plaintiffs from charting each instrumentality if the charts would be identical or if one instrumentality is sufficiently representative of others." *Team Worldwide Corp. v. Acad., LTD*, 2:19-CV-00092-JRG-RSP, 2020 WL 4601635, at *2 (E.D. Tex. Aug. 11, 2020) (citations omitted).

P.R. 3-1 does not require explicit disclosure of inducement allegations. *See Fenner Invs., Ltd. v. Hewlett-Packard Co.*, CIV.A. 6:08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010) ("[Defendants'] assertion that P.R. 3–1 requires explicit disclosure of inducement allegations in the infringement contentions is incorrect."). A plaintiff may "provide[] sufficient notice of its inducement claims" in its complaint, by identification of evidence, or through discovery responses. *Id.* at *3.

Deciding if an expert report should be struck is akin to excluding evidence due to a discovery violation. *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7180756, at *2 (E.D. Tex. May 1, 2008). This Court has considered non-exclusive factors determining whether to strike expert reports, including: (1) the explanation for untimeliness; (2) the importance of evidence that might be excluded; (3) the danger of unfair prejudice; and (4) the availability of a continuance to cure any prejudice. *See S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).

## IV.   ANALYSIS

### A.   Ultravision's Infringement P.R. 3-1 Contentions Properly Identified the RSX Family, Including the Accused RSXF Models

Ultravision's January 28, 2020 infringement contentions identified the entire RSX product family, including RSXF models thereof. *See* Supra Section II.A. Accordingly, the products identified in Dr. Coleman's report were originally accused, and the Motion should be denied because Ultravision properly provided Defendants with notice pursuant to P.R. 3-1.

Defendants' argument relies on the mischaracterization that the RSXF products were not identified because they were not among the two representative instrumentalities listed in a table within Ultravision's Disclosure of Asserted Claims and Infringement Contentions. Dkt. 131 at 3 (citing Ex. 1). As an initial matter, Defendants are apparently aware that products in that table

7

are exemplary, as they do not contend that Ultravision failed to identify other RSX area light models not in that list (*e.g.* the RSX1 and RSX4). In any case, Defendants ignore that the claim chart attached to Ultravision's contentions as Appendix 5 identified the entire "RSX LED" as including the entire RSX family with footnotes identifying documents that specifically describe the entire RSX "Area and Flood" family. *See e.g.* Ex A at 1; Ex. D at 44. Defendants also ignore that Ultravision included annotated pictures of the RSXF2 in its claim chart. *See* Ex A at 19-22. Accordingly, Defendants' assertion that Ultravision did not identify the RSXF models is incorrect. Defendants' motion to strike Dr. Coleman's opinions regarding the RSXF products should be denied as a threshold matter.

### B. The Factors Weigh against Exclusion of Dr. Coleman's Opinions

Even if Dr. Coleman's opinions regarding the RSXF products were new – they are not – they should not be stricken under the Court's four factor analysis.

#### 1. Defendants Have Not been Unfairly Prejudiced

Defendants are not unfairly prejudiced because Ultravision advances the same theory against the RSXF models as Defendants have long known to be asserted against all RSX products. *See Semcon IP Inc. v. ZTE Corp.*, 2:16-CV-00437-JRG-RSP, 2018 WL 4501808, at *3 (E.D. Tex. Feb. 28, 2018) ("[T]he original theory, which relied on the DVFS framework of the ARM Cortex-A5, Cortex-A7, and Cortex-A9 processor designs, appears to generally be the same . . . Thus, to the extent that one of the originally accused 32 products includes one of these later architectures, reference to the later architecture is not stricken."). Dr. Coleman's opinions regarding the RSXF products are both within the scope of Ultravision's original contentions, and identical to his opinions regarding infringement by RSX area lights.

Dr. Coleman relied on a single claim chart advancing parallel theories against all RSX and RSXF models because Ultravision's theory of infringement against each product is identical.

8

 Thus, even accepting their incorrect assertion that the RSXF products were not identified, Defendants had ample time to address Ultravision's arguments, and in fact responded with the same defenses they raised regarding the RSX area lights.

Defendants resort to mischaracterizing Dr. Coleman's testimony, without providing any citation, to assert that some unspecified differences in the "form factor" or light distribution among the RSX family resulted in different theories of infringement. Dkt. 131 at 8. They did not, as Dr. Coleman's report explains in detail. *See* Ex. C ¶ 148. ███████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████ Slight differences in "form factor" are similarly irrelevant, as each product comprises an aluminum housing that acts as a heat sink, each uses a

9

number of the same light engine components, and each has an ingress protection rating of 66. *Id.* ¶ 154-55.

Accordingly, because Defendants have had notice of Ultravision's theory of infringement against the RSXF models of the RSX family since service of its original infringement contentions, they would not have been prejudiced even if the RSXF models were not identified.

### 2. Dr. Coleman's Opinions Regarding the RSXF Models are Important

Dr. Coleman's opinions regarding infringement of the RSXF products are important because their exclusion would effectively dispose of infringement for those products for the purposes of this case. ▮▮▮▮▮▮▮▮▮▮ Thus, xclusion of Dr. Coleman's opinions would prevent Ultravision from timely enforcing its patent rights against a significant portion of accused products.

### 3. Explanation for Any Untimeliness

Even if Ultravision's identification of the RSXF products were not sufficient under P.R. 3-1 (it was), Ultravision reasonably understood that Defendants had notice of its infringement theories without supplementation. "A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions . . . the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817–18 (E.D. Tex. 2006); *see also Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) ("The Local Patent Rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.") (citations omitted).

Defendants' failure to alert Ultravision to any issue with its contentions against the RSX products during fact discovery weighs against striking Dr. Coleman's opinions.

Contrary to their new protests, Defendants' actions during the fact discovery period show that they were aware the entire RSX family of products were accused of infringement. *See supra* Section II.A. Ultravision's claim charts included pictures of the RSXF2, and defined "RSX LED" with footnotes to numerous documents specifically identifying floodlight versions. Defendants apparently had no issues recognizing that the RSX1 and RSX4 were accused in the same chart, despite the fact that they were not among the representative products listed.

█████████████████████████████████████████████████████████████
████████████████████████████████████ ████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████
██████████████████████████ Defendants remained silent, despite these indications that the RSXF products were accused. Defendants did not seek to clarify the identification of Accused Products in response to interrogatories that they now contend sought that information, nor did they inquire regarding the RSXF products when Ultravision did **not** include them in the set of products it understood to require supplemental charts. *See* supra II.A. Defendants instead laid behind the log, apparently waiting to file the instant motion, and waived any objections.

Accordingly, this factor weighs against striking Dr. Coleman's opinions.

### 4. A Continuance is Not Necessary

This factor weighs against striking Dr. Coleman's opinions, because they do not require a continuance of any deadlines. Defendants' technical expert, Mr. Michael Gershowitz, has already fully responded to Dr. Coleman's opinions regarding the RSXF products, █████████ ████████████████████████████████ and by modeling his own light distributions.

11

*See* Ex. L at ¶ 225.  Because Defendants have already fully addressed Dr. Coleman's opinions, no continuance is necessary.

      **C.    Dr. Coleman's Inducement Opinions Are Proper**

Defendants are using this Motion to effectively seek summary judgment of no induced infringement. Dr. Coleman's opinions regarding induced infringement are consistent with the theory plead in Ultravision's complaint and are fully supported by his technical opinions regarding the Accused Products. To the extent Defendants seek to exclude testimony regarding their knowledge or intent, the Motion is moot as Dr. Coleman does not proffer any such opinions.

Moreover, Defendants' argument that Ultravision failed to properly disclose its induced infringement theories is based on a misapprehension of P.R. 3-1, and on outright falsehoods regarding the scope of their interrogatories. First, contrary to Defendants' unsupported assertions, P.R. 3-1 does not require explicit disclosure of inducement allegations. *See Fenner*, 2010 WL 786606, at *2 ("[Defendants'] assertion that P.R. 3–1 requires explicit disclosure of inducement allegations in the infringement contentions is incorrect."). Defendants were undisputedly on notice that Ultravision plead indirect infringement but laid behind the log in an attempt to take advantage of their incorrect conclusion that these claims were waived in Ultravision's contentions. Second, Defendants did not seek discovery regarding Ultravision's indirect infringement allegations, and their interrogatory Nos. 5 and 13 do not concern Ultravision's induced infringement allegations. Rather, interrogatory No. 5 sought "all legal and factual bases for Your damages claims against Defendants. . ." and Interrogatory No. 13 sought

12

"[f]or each product . . . that You are claiming entitlement to damages in the form of lost profits, identify all competing products. . ." Ex. I at 7; Ex. J at 7. Defendants never mentioned indirect or induced infringement in correspondence regarding Ultravision's responses, nor did they ever seek such discovery informally.

Accordingly, Defendants were on notice of Ultravision's induced infringement claims, and Dr. Coleman's opinions are proper. Defendants motion should be denied.

## V.   CONCLUSION

Accordingly, Ultravision respectfully requests that Defendants' Motion to Strike Portions of Dr. Zane Coleman's Expert Report Regarding Infringement Theories Not Disclosed in Fact Discovery and Plaintiff's Argument of the Same (Dkt. 131) be denied in its entirety.

Dated:  December 14, 2020                                     Respectfully submitted

                                                                        */s/ Alfred R. Fabricant*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
Daniel J. Shea
NY Bar No. 5430558
Email: dshea@fabricantllp.com
**FABRICANT LLP**
230 Park Avenue, 3rd Floor W.
New York, New York 10169
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
State Bar No. 01938000
Email: sbaxter@mckoolsmith.com

13

        Jennifer L. Truelove
        State Bar No. 24012906
        Email: jtruelove@mckoolsmith.com
        **MCKOOL SMITH, P.C.**
        104 E. Houston Street, Suite 300
        Marshall, Texas 75670
        Telephone: (903) 923-9000
        Facsimile: (903) 923-9099

        **ATTORNEYS FOR PLAINTIFF ULTRAVISION TECHNOLOGIES, LLC**



## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2020, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
