# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ULTRAVISION TECHNOLOGIES, LLC, *Plaintiff,* v. HOLOPHANE EUROPE LIMITED, ACUITY BRANDS LIGHTING DE MEXICO S DE RL DE CV, HOLOPHANE, S.A. DE C.V. and ARIZONA (TIANJIN) ELECTRONICS PRODUCTS TRADE CO., LTD. *Defendants.* | Case No. 2:19-cv-00291-JRG-RSP **JURY TRIAL DEMANDED** |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S OPPOSED MOTION TO STRIKE PORTIONS OF THE REBUTTAL REPORT OF MICHAEL N. GERSHOWITZ, PE REGARDING NON-INFRINGEMENT**

Dr. Coleman's flawed and methodologically unsound demonstration testing is the centerpiece of Ultravision's infringement case. Based on this testing, Ultravision intends to argue that (i) pole mounted street lights and (ii) a specific billboard light infringe because they *are capable of* uniformly illuminating a 5.5 foot by 11 foot junior poster board, despite *not being configured to* do so. Dr. Coleman's testing was outcome oriented and contrived to obtain Ultravision's intended results; it does not reflect any real world application for which the Accused Products were designed. Mr. Gershowitz's rebuttal opinions expose this disconnect and are relevant to the jury's analysis of infringement. Yet, Ultravision contends those rebuttal opinions should be hidden from the jury based on relevance and a misapplication of a claim construction.

As explained in Defendants' Opposition (Dkt. 143), Mr. Gershowitz's rebuttal opinions are plainly relevant to the jury's determination of whether the Accused Products are configured to uniformly illuminate the "area" or "billboard" selected by Dr. Coleman for testing. Even a cursory

review of Mr. Gershowitz's report confirms that his opinions are relevant to the "configured to" claim limitations and that Ultravision's characterization of Defendants' Opposition as raising new arguments and rewriting Mr. Gershowitz's opinions is incorrect.  *See, e.g.*, Reply, Dkt. 162 at 1.

All of Mr. Gershowitz's challenged opinions are in the sections of his report that address the "configured to . . ." limitations of the claims.  In paragraphs 132-139, Mr. Gershowitz explains why the accused SVLED II is not configured to direct light across the display surface that Dr. Coleman tested to argue infringement of the '410 Patent.  *See* Report, Dkt. 143, Ex. 4  at pp. 52-58 (identifying configured to claim limitation being addressed in Section VIII.B.1.c.).  Likewise, in paragraphs 195-201, Mr. Gershowitz offers opinions as to why the accused KAX and RSX products are not configured to direct light towards an area without hot sports or dead spots, as required by the '946 Patent.  *Id.* at pp. 87-90 (identifying configured to claim limitation being addressed in Section VIII.C.2.c.).  In paragraphs 215-220 and 222, Mr. Gershowitz offers similar opinions with respect to the newly accused RSXF family of products and the '946 Patent.  (*Id.* at 96-99 (identifying configured to claim limitation being addressed in Section VIII.D.2.b.).  Finally, paragraphs 228, 232-233, 236 and 239 are part of Mr. Gershowitz's rebuttal critiques to Dr. Coleman's demonstration testing methodology (*id.* at pp. 99 – 105 (Section VIII.E) that Dr. Coleman found necessary to reach his intended results; despite not reflecting real world applications.

The crux of these challenged opinions is that the Accused Products are not configured to evenly illuminate the space selected for testing by Dr. Coleman; and that his testing parameters do not reflect a methodologically sound basis for determining whether the limitations are met. Dr. Coleman's flaw is not that he tested "a smaller portion of a larger sign" (Reply, Dkt. 162 at 3); it is his arbitrary selection of the sub-section within the illuminated area that he found to be most

uniformly illuminated. Based on that contrived testing methodology, he intends to show the jury that the Accused Products are capable of illuminating the selected sub-section (even though his test results reflect noticeably unevenness). But in doing so, Dr. Coleman ignores the "configured to" claim limitation, as illustrated by the actual illumination patterns of the Accused Products that show that they are not configured to illuminate Dr. Coleman's selected sub-section.

In rebuttal, Mr. Gershowitz does not opine that there can be no light spillage or that the junior poster board is too small to be a billboard or an illuminated area. Rather, he offers the opinion that Dr. Coleman's testing methodology and results do not support an infringement finding because the tested sub-section is a small fraction of the entire illuminated space and Acuity did not configure the Accused Products to illuminate the tested sub-section. As Mr. Gershowitz explains, a light assembly that is configured to illuminate Dr. Coleman's selected test surface would not have the significantly larger illumination pattern provided by the Accused Products. In other words, while the claims may not preclude light spillage, Dr. Coleman's test methodology results in the unintended and unacceptable outcome of only a small fraction of the light illuminating the test surface. That suggests that this is not an issue of light spillage — it is an issue of an improper testing methodology. As Mr. Gershowitz explained during his deposition, a POSITA, who assesses whether an optics panel is configured to illuminate a billboard or area, would consider the total illumination pattern, rather than a sub-section of the illuminated space. *See* Gershowitz Deposition, Dkt. 143, Ex. 8 at 112:3-12 and Dkt. 126, Ex. C at 103:11-104:23. Mr. Gershowitz's opinions expose the disconnect between Dr. Coleman's testing and the real world; and that disconnect is plainly relevant to the jury's infringement analysis.

Mr. Gershowitz's opinions likewise expose a disconnect between the test mounting configuration used by Dr. Coleman and the real world. The jury's consideration of whether the

Accused Products are configured to evenly illuminate a billboard or area, implicates a consideration of whether the products are being used in the manner for which they are designed. The jury is entitled to understand that the KAX, RSX and RSXF (if permitted by the Court to be presented) are pole mounted street lights designed to be mounted 18 to 40 feet above the ground, rather than rotated on their side and positioned 5 feet from a wall. This fact is plainly relevant to whether the Accused Products are configured to illuminate the test surface that Dr. Coleman selected and, in offering that opinion, Mr. Gershowitz does not impose a "'positioning' requirement," as Ultravision argues. The asserted independent claim does not require any specific mounting position, but they do require that the Accused Products be configured to provide uniform illumination; not merely capable of providing illumination when contorted in an unintended and/or warranty-voiding manner. The jury certainly is entitled to know that the accused KAX and RSX products are designed to provide illumination at a distance of 18 to 40 feet; yet Dr. Coleman tested them at 5 feet because the variations of the illumination pattern were less noticeable at that distance.

Finally, Ultravsion's effort to distinguish the claimed transparent substrate from the claimed light assembly is a red herring. *See* Reply, Dkt. 162 at 5. While Ultravision's argument focuses on the transparent substrate of the '410 and '413 patents, there is no such limitation in the asserted claims, *i.e.*, claims 10, 11 and 14 of the '410 Patent and claim 1 of the '413 Patent. To the extent that Ultravision intended to refer to the claimed plurality of lenses or optical elements, the accused lenses of the SVLED II (the only accused product for the '410 and '413 Patent) are affixed to the housing and their orientation is dictated by the orientation and position of the SVLED II. In other words, the configuration of the accused lenses and the optics panel of which they are

a part go hand-in-hand and the argued distinction cannot save Ultravision's flawed infringement read.

For all of these reasons, Ultravision's Motion to Strike (Dkt. 126) should be denied.

Dated:  December 28, 2020         Respectfully submitted,

/s/ Matthew S. Yungwirth
Matthew S. Yungwirth
msyungwirth@duanemorris.com
Glenn D. Richeson
gdricheson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  (404) 253.6900
Facsimile:  (404) 253.6901

Melissa Richards Smith (TBN 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone:  903-934-8450
Facsimile: 903-934-9257

Gilbert A Greene
BGreene@duanemorris.com
**DUANE MORRIS LLP**
900 S. Capital of Texas Hwy.
Suite 300
Austin, TX 78746-5435
Telephone:  713-402-3946
Facsimile:  713-513-3583

*Counsel for Defendants Holophane Europe Limited Acuity Brands Lighting De Mexico S De RL De CV Holophane, S.A. De C.V. and Arizona (Tianjin) Electronics Products Trade Co., LTD.*

## CERTIFICATE OF SERVICE

      I certify that on December 28, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          /s/ *Melissa R. Smith*
                                          Melissa R. Smith